# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Gerard Scanlan and Sean Brydges | : | 21-cv-00492-JMY |
|  | : |  |
| Plaintiffs, | : | JURY TRIAL DEMANDED |
|  | : |  |
| v. | : |  |
|  | : |  |
| Ridley Township, et al. | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## DEFENDANT SCOTT WILLOUGHBY'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 4

    A.   Legal Standard ......................................................................................... 4

    B.   Plaintiffs Have Not Plausibly Pled That Willoughby Was Personally
        Involved With the Decision to Dissolve the Anti-Crime Unit, and They
        Cannot Pursue Claims Against Him for That Alleged Adverse Action ................ 5

    C.   Plaintiffs' Section 1983 Claims Against Willoughby Should Both be
        Dismissed ................................................................................................. 7

        1.   Alleged Retaliatory Actions Committed by Willoughby That
            Occurred Within the Two-Year Limitations Period ................................. 8

        2.   Plaintiffs' Section 1983 Claim Based on Alleged Violation of
            Their Rights Under the First Amendment (Count I) Must be
            Dismissed Because the Alleged Retaliatory Acts That Occurred
            After February 2, 2019 Bear No Causal Connection to the Alleged
            Protected Speech ....................................................................... 9

            a)   Plaintiffs' Alleged Speech ........................................... 11

            b)   Speech That is Not Constitutionally Protected ............................. 11

                (1)   Speech About Personal Claims to Overtime.................... 11

                (2)   Speech Emanating From the Plaintiffs' Job Duties .......... 12

            c)   Speech That Does Not Bear a Plausible Causal Connection
                to the Post-February 2, 2019 Alleged Retaliatory Events............. 13

        3.   Plaintiffs' Section 1983 Claim Based on Alleged Violation of
            Their Due Process Rights Under the Fourteenth Amendment
            (Count III) Must be Dismissed Because They Have Not Plausibly
            Pled That Willoughby Made a Stigmatizing Comment After
            February 2, 2019 ....................................................................... 14

    D.   Plaintiffs' Claims Under Pennsylvania's Whistleblower Act (Count V)
        Must be Dismissed Because Brydges and Scanlan Have Not Plausibly
        Pled That Willoughby Retaliated Against Them Within the Applicable
        180-Day Limitations Period...................................................................... 16

    E.   Plaintiffs' Tort Claims for Defamation (Count VI) and Invasion of Privacy
        (Count VII) Must be Dismissed Because They Were Not Brought Within
        the One-Year Limitations Period .............................................................. 18

        1.   Count VI Must be Dismissed Because the Plaintiffs Have not
            Alleged That Willoughby Published a Defamatory Comment After
            February 2, 2020 ....................................................................... 18

        2.   Count VII Must be Dismissed Because Plaintiffs Have Not
            Alleged That Willoughby Made a Misrepresentation About Them
            After February 2, 2020................................................................ 19

F.      Plaintiffs' Tort Claim for Intentional Infliction of Emotional Distress (Count VIII) Must be Dismissed Because Plaintiffs' Have Not Plausibly Alleged That Willoughby Engaged In Outrageous Conduct After February 2, 2019 ................................................................................................ 20

G.      Plaintiffs' Civil Conspiracy Claim Must be Dismissed Because Plaintiffs Have Not Plausibly Pled that Willoughby Acted in Concert With Pisani, Willert, and Ryan ...................................................................................... 22

H.      Willoughby Is Immune From Suit for Actions he Took as the Captain of the Ridley Township Police Department ............................................. 23

III.    CONCLUSION ........................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accurso v. Infra-Red Services, Inc.* 23 F. Supp. 3d 494 (E.D. Pa. 2014) ...................................... 22

*Addelespurger v. Wecht*, No. Civ. A. 16-1157, 2018 WL 1412409 *6 (W.D. Pa. 2018)....... 20, 21

*Alers v. City of Phila.*, 919 F. Supp. 528 (E.D. Pa. 2013) ........................................................... 6

*Allen v. City. of Phila.*, No. 1253 C.D.  219, 2019 WL 1528538 *7 (Pa. Commw. Ct.  2019).... 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)............................................ 4, 5, 6, 16, 23

*Baur v. Crum*, 882 F. Supp. 785 (E.D. Pa. 2012) ....................................................................... 10

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)................................ 6

*Bock v. CVS Pharmacy, Inc*., No. Civ.A.07–412, 2008 WL 3834266, at *2
   (E.D. Pa. Aug. 14, 2008)........................................................................................................ 20

Brennan v. Norton, 350 F.3d, 399, 420 (3d Cir. 2003).............................................................. 13

*Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786-87 (3d Cir. 2016)........................................ 5

*Demetrius v. Marsh*, 560 F. Supp. 1157, 1159 (E.D. Pa. 1983) .................................................. 4

*Dice v. Johnson,* 711 F. Supp. 2d 340, 358 (M.D. Pa. 2010) ..................................................... 22

*Falco v. Zimmer*, 767 Fed. Appx. 288, 302 (3d Cir. 2019) ............................................... 9, 10, 12

*Frazier v. City of Phila*, 441 F. Supp. 3d 76, 93 (E.D. Pa. 2020).................................. 12, 16, 23

*Freeman v. McKellar*, 795 F. Supp. 733, 741 (E.D. Pa. 1992).................................................. 16

*Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) .......................................................................... 9

*Highland Tank & Mfg. Co. v. PS Intern., Inc*., 393 F. Supp. 2d 348, 356 (W.D. Pa. 2005) .......... 4

*Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) ........................................... 14, 15

*Hussein v. UPMC Mercy Hosp.*, 466 Fed. Appx. 108, 112 (3d Cir. 2012) ................................ 10

*Innella v. Lenape Valley Foundation*, No. Civ. A. 14-2862, 2014 WL 4805673 *3
   (E.D. Pa. 2014).................................................................................................................... 19

*Jackson v. Lehigh Valley Physicians Grp*., No. Civ. A. 08-3043, 2009 WL 229756 at *5
   (E.D. Pa. 2009).................................................................................................................... 17

*Jaglowicz v. Bethel Township*, 178 F. Supp. 3d 262, 270-71 (E.D. Pa. 2016) ........................... 23

*Johnson v. Anhorn*, 334 F. Supp. 2d 802 (E.D. Pa. 2004) ......................................................... 19

*Kane v. Chester Cnty.*, 811 Fed. Appx. 65 (3d Cir. 2020)................................................... 14, 15

*Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006).................................................... 7

*Kleim v Cnty. of Bucks*, 275 F. Supp. 2d 628, 636-37 (E.D. Pa. 2003) ...................................... 19

*Knopick v. Connelly*, 639 F.3d 600, 611 (3d Cir. 2011) ............................................................. 18

*Lahovski v. Rush Twp.*, 441 F. Supp. 3d 43, 51 (M.D. Pa. 2020)......................................... 6, 9-10

*Lawson v. Pa. SPCA*, 124 F. Supp. 3d 394 (E.D. Pa. 2015) ........................................ 20

*Lewicki v. Wash. Co. Pa.*, 431 Fed. Appx. 205, 208 (3d Cir. 2011) ............................... 8

*Mayer v. Belchick*, 605 F.3d 223, 229 (3d Cir. 2010) .................................................. 4

*McAndrew v. Bucks Cnty Bd. of Com'rs*, 982 F. Supp. 2d 491, 505 (E.D. Pa. 2013 ) .......... 13, 17

*Owens v Okure*, 488 U.S. 235, 240, 109 S. Ct. 573 (1989) ........................................... 7

*Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009) .................................... 23

*Roseberry v. City of Phila*, 716 Fed. Appx. 89, 92 (3d Cir. 2017) ............................... 14

*Sanford v. Stiles,* 456 F.3d 298, 315 (3d Cir. 2006) .................................................. 24

*Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010) .................................... 7

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir. 2010) ........................... 5

*Tucker v. MTS, Inc.*, No. Civ. A. 97-4717, 1998 WL 67527 *3 (E.D Pa. 1998) aff'd,
    229 F.3d 1139 (3d Cir. 2000) ...................................................................... 21

*William Ghrist v. CBS Broadcasting, Inc.,* 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) .......... 18, 21

*Williams v. Lawrence Cnty. Career & Tech. Cntr.*, 2017 WL 4842549 *6 at n. 10
    (W.D. Pa. 2017) ................................................................................... 15

## Statutes

42 Pa. C. S. § 5524 ................................................................................. 20, 21

42 Pa. C.S. § 5523 .................................................................................. 19

42 Pa. C.S. § 5524(7) .............................................................................. 22

42 Pa. C.S.A. § 5524 ............................................................................... 7

42 Pa. Cons. Stat § 8343(a) ....................................................................... 18

42 U.S.C. §1983 .................................................................................... 7

42. U.S.C. § 1988 .................................................................................. 7

43 P.S. § 1423(a) .................................................................................. 16

43 P.S. § 1424(a) .................................................................................. 17

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Gerard Scanlan and Sean Brydges | : | 21-cv-00492-JMY |
| | : | |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| Ridley Township, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT SCOTT WILLOUGHBY'S BRIEF IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant, Scott Willoughby ("Willoughby") respectfully submits this Brief in Support of his Motion to Dismiss Plaintiffs' Amended Complaint.

**I.  INTRODUCTION**

The genesis of the instant action is the profound dissatisfaction of Plaintiffs Gerard Scanlan ("Scanlan") and Sean Brydges ("Brydges") (collectively "Plaintiffs") with the decision to disband the Anti-Crime Unit ("ACU") of the Ridley Township Police Department – a decision that did not involve Defendant Scott Willoughby ("Willoughby").  In order to assess whether to dismiss Plaintiff's Amended Complaint, it is crucial for the Court to understand the context of the current suit.  Plaintiffs strategically omit relevant information from their Amended Complaint.

The ACU was a specialized unit of the Ridley Township Police Department – a suburban police force in Delaware County with approximately three dozen officers.  The Township established the ACU in 2014, approximately one year prior to Willoughby becoming Captain of the Department.  In recent years, the ACU consisted of the Plaintiffs and one other detective.  The

ACU focused on drug trafficking investigations.  Members of the ACU were sworn into the Delaware County Drug Task Force and worked cases within the county but mostly outside Ridley Township.  Willoughby, a law enforcement officer with more than three decades of honorable service to his name, became Captain of Ridley Township Police Department in 2015.[1]  At that time, the ACU technically fell under Willoughby's jurisdiction.  However, members of the ACU operated with impunity and ignored the most fundamental requirements of reporting their activities to the Captain of the Ridley Township Police Department.  This created tension within the Department, as members of the ACU ignored the customary chain of command that exists in all police departments.

The Commissioners of Ridley Township recently disbanded the ACU.  As a result, Plaintiffs are now assigned within the traditional structure of the Department.  Their current reporting structure stands in contrast to the liberties Plaintiffs granted themselves as members of the now-defunct special unit.  Plaintiffs' Amended Complaint is a weak attempt to federalize their disagreement with a legitimate administrative decision to disband the ACU.

Plaintiffs' salacious and sensational allegations are not new.  It is, indeed, ironic, that Plaintiffs who allegedly covet their former undercover roles have been seeking media attention in local newspapers and online outlets for years.  Plaintiffs previously lodged these allegations with Ridley Township.  A firm hired to conduct a thorough investigation fully vetted Plaintiffs' claims and determined them to be <u>unsubstantiated</u>.

Even assuming *arguendo* that all of Plaintiffs' factual allegations in the Amended Complaint are true, as the Court must in assessing this motion to dismiss, Plaintiffs are still not

---

[1] Unlike the organizational structure of other police departments, the Captain of the Ridley Township Police Department reports to the Police Commissioner.  During the time period at issue, Captain Willoughby reported to Commissioner Robert Willert and the Ridley Township Board of Commissioners.

entitled to relief and their Amended Complaint must be dismissed with prejudice.  In addition to finding that Plaintiffs have failed to plausibly allege that Willoughby was involved in disbanding the ACU, this motion asks the Court to find that the stale allegations about actions Willoughby purportedly took are either: (1) barred by the applicable statutes of limitations, or (2) unsupportive of Plaintiffs' legal claims due to a lack of causation.

Significantly, three of the seven counts against Willoughby involve claims with a statute of limitations period of one year or less.  The applicable limitations periods render those three claims deficient as a matter of law based solely on Plaintiffs' Pleading.  Those time-barred counts are: (1) Count V- Pennsylvania Whistleblower Act, (2) Count VI- Defamation, and (3) Count VII- Invasion of Privacy- False Light.  The other four causes of action involve two-year statutes of limitations.  Application of that two-year limitations period results in the majority of Plaintiffs' factual averments for those four counts being barred from consideration.  Those four counts are: (1) Count I- 42 U.S.C. § 1983 based on an alleged deprivation of a First Amendment right, (2) Count III- 42 U.S.C. § 1983 based on an alleged deprivation of a Fourteenth Amendment right, (3) Count VIII- Intentional Infliction of Emotional Distress, and (4) Count IX- Conspiracy.  Once the time-barred events are set aside for those four counts,  Plaintiffs' claims disintegrate further due to a lack of causation.

For reasons elaborated upon herein, Willoughby respectfully requests that the Court dismiss all claims against him with prejudice.

## II.   **ARGUMENT**[2]

### A.   **Legal Standard**

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  When deciding a Rule 12(b)(6) motion to dismiss, the Court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."  *Mayer v. Belchick*, 605 F.3d 223, 229 (3d Cir. 2010).

Statute of limitations defenses "may be raised by a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the time alleged in the complaint shows clearly that the cause of action has not been brought within the statute of limitations."  *Demetrius v. Marsh*, 560 F. Supp. 1157, 1159 (E.D. Pa. 1983) (internal citations omitted); *see also Highland Tank & Mfg. Co. v. PS Intern., Inc*., 393 F. Supp. 2d 348, 356 (W.D. Pa. 2005) (internal citations omitted) (courts "can consider a statute of limitations defense as part of a Rule 12(b)(6) motion" when the "time alleged in the statement of a claim *shows* that the cause of action has not been brought within the statute of limitations").

For those claims that Brydges and Scanlan have brought within the statute of limitations period, the factual assertions must satisfy the "plausibility" requirement articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  Pursuant to *Iqbal,* "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also*

---

[2] Willoughby hereby incorporates by reference all the arguments asserted by Defendants Edmond Pisani, Joseph Ryan, and Ridley Township in their respective motions to dismiss to the extent they are applicable to the claims asserted against him.

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir. 2010).  Although the plausibility standard does not impose a probability requirement, it requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786-87 (3d Cir. 2016).

### B. Plaintiffs Have Not Plausibly Pled That Willoughby Was Personally Involved With the Decision to Dissolve the Anti-Crime Unit, and They Cannot Pursue Claims Against Him for That Alleged Adverse Action

Brydges and Scanlan allege that dissolving the ACU was a "demotion" that resulted in them being re-assigned to be "patrolmen."  Plaintiffs assert two claims against Willoughby upon which they argue that he, and other Defendants, subjected them to an adverse employment action when certain Defendants disbanded the ACU: (1) a putative Section 1983- First Amendment claim, and (2) a Pennsylvania Whistleblower Statute claim.  However, Brydges and Scanlan do not plead – nor could they – that Willoughby was personally involved with that decision.

Paragraphs 200 to 216 of the Amended Complaint sets forth Plaintiffs' theory about how the ACU was disbanded.  Plaintiffs explicitly aver that Defendants Willert and Ryan decided to retaliate against them by disbanding the ACU and returning them to a patrol platoon.  (Amend. Compl. ¶ 203.)  Plaintiffs allege that Willert and Ryan orchestrated the promotion of another member of the ACU, Lt. Hamill ("Hamill"), so that he could carry-out the directive to disband the ACU.  (Amend. Compl. ¶¶ 207-214.)

Despite having already amended their Pleading once,[3] Plaintiffs make only the following two references to Willoughby in those seventeen paragraphs:

> ¶ 205- Conversely, Willert, Willoughby, and Ryan retaliated in a manner that precluded Brydges and Scanlan from continuing their roles as police detectives and their roles in working with [the]

---

[3] Willoughby respectfully submits that Plaintiffs should not be granted leave to amend their Pleading a second time, as such pleading would be futile.

> Delaware County Wide Drug Task Force and with Federal Agencies.
>
> ¶ 216- On January 29, 2021 at 3:50 pm, Willoughby distributed a directive restructuring the Ridley Police Department.

Neither paragraph is sufficient to demonstrate that Willoughby had the requisite personal involvement needed to hold him liable for the decision to disband the ACU. *See Alers v. City of Phila.*, 919 F. Supp. 528 (E.D. Pa. 2013) *citing  Smith v. Cent. Dauphin Sch. Dist.*, 355 Fed. Appx. 658, 667 (3d Cir. 2009)  ("Where there is more than one defendant, a plaintiff must show that each individual defendant participated in or acquiesced to the alleged retaliation"); *see also Lahovski v. Rush Twp.*, 441 F. Supp. 3d 43, 51 (M.D. Pa. 2020) (citation omitted) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs…").

As for Paragraph 205, the Supreme Court has made clear that such conclusory representations are insufficient to survive a motion to dismiss.  *See Iqbal,* 556 U.S. at 678 *citing Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (internal quotations omitted) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation").  Paragraph 205 is a quintessential "legal conclusion couched as a factual allegation" that does not assert the requisite facts needed to "nudge [Plaintiffs'] claims across the line from conceivable to plausible."  *See Twombly*, 550 U.S. at 547.

As for Paragraph 216, that paragraph refers to Willoughby distributing an official written directive on January 29, 2021, attached as Exhibit 7 to the Amended Complaint (improperly referenced as Exhibit 8 in ¶ 216 of the Amended Complaint), announcing several new personnel assignments for the Ridley Township Police Department.  While those personnel assignments included, among others, assigning Scanlan and Brydges to police patrol platoons within Ridley

Township, Willoughby issued that memorandum <u>after</u> Lt. Hamill had carried out the alleged directive from Willert and Ryan to disband the ACU.  (*See* Amend. Compl. ¶¶ 212-215.)  Thus, Plaintiffs' reference to this memorandum does not provide any "further factual enhancement" sufficient to support a finding that Plaintiffs have plausibly alleged that Willoughby was involved in the decision to disband the ACU.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010) (court disregarding "naked assertions devoid of further factual enhancement" when dismissing a Section 1983 claim against individuals for supervisory liability.)

Accordingly, Willoughby cannot be liable for the damages Plaintiffs alleged flowed from disbanding the ACU.

### C.     Plaintiffs' Section 1983 Claims Against Willoughby Should Both be Dismissed

Section 1983 provides remedies for deprivations of rights established by the Constitution. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006).  "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [the plaintiff] of a right secured by the Constitution or the laws of the United States."  *Id. citing American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S. Ct. 977 (1999).  Here, Brydges and Scanlan allege that Willoughby deprived them of rights under the First and Fourteenth Amendments of the U.S. Constitution.

42 U.S.C. §1983 does not explicitly set forth a statute of limitations period.  However, 42 U.S.C. § 1988, titled Proceedings in Vindication of Civil Rights, has been interpreted by the Supreme Court to compel federal courts "to borrow and apply to all § 1983 claims the […] most analogous state statute of limitations."  *Owens v Okure*, 488 U.S. 235, 240, 109 S. Ct. 573 (1989) (citations omitted).  For Section 1983 claims originating in Pennsylvania, the two-year limitations

period set forth in 42 Pa. C.S.A. § 5524 applies.  *See Lewicki v. Wash. Co. Pa.*, 431 Fed. Appx. 205, 208 (3d Cir. 2011).

### 1.     Alleged Retaliatory Actions Committed by Willoughby That Occurred Within the Two-Year Limitations Period

Brydges and Scanlan waited until February 2, 2021 to file their Complaint.[4]  (*See* Dkt. 1.) Thus, for their two Section 1983 claims, Brydges and Scanlan can only seek legal redress for alleged retaliatory actions, or stigmatizing speech, that occurred <u>after</u> February 2, 2019.  Those events that are not time-barred which the Plaintiffs have accused Willoughby of being involved with are as follows:

- In July and August of 2019, Plaintiffs allege that Willoughby attempted to deny them overtime that was incurred in connection with court appearances they made as testifying witnesses.  (Amend. Compl. ¶¶ 167-180.)

- In September 2019, Plaintiffs allege that Willoughby told a Detective with the Delaware County Criminal Investigation Division ("CID") who was investigating the burglary of Willoughby's office <u>something</u> that "implicated" the Plaintiffs in that burglary.[5]  (Amend. Compl. ¶ 189.)

- In August 2020, Plaintiffs allege that they were denied the opportunity to earn overtime in connection with working during a Black Lives Matter march.  (Amend. Compl. ¶¶ 190-194.)

As set forth below, neither the overtime-related allegations nor the alleged stigmatizing speech are sufficient to support Plaintiffs' Constitutional claims.

---

[4] While Plaintiffs filed an Amended Complaint on March 8, 2021, the factual averments at issue in this motion were pled in their original February 2, 2021 Complaint.

[5] Plaintiffs do not disclose any details in their Amended Complaint about what that <u>something</u> was that Willoughby purportedly said.

2.    **Plaintiffs' Section 1983 Claim Based on Alleged Violation of Their Rights Under the First Amendment (Count I) Must be Dismissed Because the Alleged Retaliatory Acts That Occurred After February 2, 2019 Bear No Causal Connection to the Alleged Protected Speech**

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Those circumstances, however, are limited. Specifically, the Supreme Court has directed that when public employees speak pursuant to their official duties, they are not speaking as citizens for First Amendment purposes. *Garcetti*, 547 U.S. at 421; *see also Lahovski*, 441 F. Supp. 3d at 53 (emphasis added) (public employee speech made in the course of employment, is not citizen speech protected by the First Amendment.)

Courts determine what constitutes speech about "a matter of public concern" by conducting "a particularized examination of each activity for which the protection of the First Amendment is claimed to determine whether it involves a matter of public concern." *Lahovski,* 441 F. Supp. at 55 (internal quotations omitted) *citing Falco v. Zimmer*, 767 Fed. Appx. 288, 302 (3d Cir. 2019). "Activity involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Falco,* 767 Fed. Appx. at 302 (citations and quotations omitted). By contrast, "a discrete unit of speech [that] addresses only the employee's own problems and, even if those problems brush ever so gently against a matter of public concern by virtue of that employee's public employment, … is merely a personal grievance" and not a matter of public concern. *Id.* at 302-03 (internal quotations and citation omitted).

Thus, the first step in establishing a *prima facie* claim of First Amendment retaliation is to demonstrate that the speech at issue is protected by the First Amendment. *Lahovski*, 441 F. Supp.

at 52 *citing Flora v. Cnty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015) (string citation omitted). "Courts determine whether an employee's speech involves public concern by reference to the speech's "content, form, and context, which encompasses the employee's motivation as well as whether it is important to our system of self-government that the expression take place." *Falco*, 767 Fed. Appx. at 302 (citations and quotations omitted).  This inquiry is a question of law for the Court to decide.  *Lahovski*, 441 F. Supp. 3d at 52.

The second step in establishing a *prima facie* claim is to show a causal link between the speech and the alleged instance(s) of retaliation.  Courts in the Third Circuit focus on two factors to determine whether a causal connection exists: "(1) the 'temporal proximity' between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the 'intervening period."  *See Hussein v. UPMC Mercy Hosp.*, 466 Fed. Appx. 108, 112 (3d Cir. 2012) (internal citations omitted); *see also Baur v. Crum*, 882 F. Supp. 785 (E.D. Pa. 2012) (internal citations and quotations omitted) (For Section 1983 claims predicated on a violation of the First Amendment, a plaintiff needs to "put forth evidence proving either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link").

Thus, there are two distinct tests that each instance of speech must pass in order for that speech to be a viable basis on which to assert a Section 1983 claim based on an alleged deprivation of a First Amendment right.  First, Brydges' and Scanlan's speech must have been made "as citizens" about "matters of public concern."  Second, that protected speech must bear a plausible causal connection to the alleged retaliatory events occurring after February 2, 2019.

### a)      Plaintiffs' Alleged Speech

Plaintiffs base their Section 1983 claim for First Amendment retaliation on the following

speech:

- In 2014, they allegedly reported to the then-Township Manager Pisani (and subsequently to Police Commissioner Willert) that Willoughby purportedly asked them to place cash into the evidence room of the Ridley Township Police Department. (Amend. Compl. ¶¶ 39-48.)

- In 2016, they allegedly told Pisani that they believed Willoughby had removed a handgun from the Delaware County Courthouse Evidence Room.  (Amend. Compl. ¶¶ 92-95.)

- In August 2017, they allegedly told a Deputy District Attorney for Delaware County that Willoughby asked them to lie about whether a defendant had cooperated with the ACU as a confidential informant. (Amend. Compl. ¶¶ 115-117.)

- In February 2018, they allegedly told a Lieutenant in the Ridley Township Police Department that Willoughby asked them to falsely inform another police department's narcotics unit that a juvenile had provided drug information to the ACU.  (Amend. Compl. ¶¶ 121-124.)

- In August 2019, they allegedly told Pisani that Willoughby was refusing to approve overtime payments due to them.  (Amend. Compl. ¶¶ 173-175.)

None of these instances of speech pass both the First Amendment protection test and the

causation test.

### b)      Speech That is Not Constitutionally Protected

### (1)      Speech About Personal Claims to Overtime

The only speech that occurred in the two years preceding the initiation of this lawsuit <u>was</u>

<u>not</u> protected by the First Amendment because it did not involve any matter of public concern.  On

August 1, 2019, Plaintiffs spoke to the then-Township Manager Pisani about an overtime dispute.

(Amend. Compl. ¶¶ 173-174.)  That speech, in addition to involving a subject area that is regularly

disputed in police departments across the country, is also not a basis for asserting a viable Section

1983 claim for alleged deprivation of a First Amendment right because the subject matter involves *personal* compensation, not a matter of "public concern." *See Falco,* 767 Fed. Appx. at 302-03 (internal citations and quotations omitted) ("activity does not involve a matter of public concern when it relates solely to mundane employment grievances" and when "speech addresses only the employee's own problems … that speech is merely a "personal grievance"); *see also Frazier v. City of Phila*, 441 F. Supp. 3d 76, 93 (E.D. Pa. 2020) (describing employee's union grievance about a lack of overtime as speech that had a "primary goal of resolving her own personal issue" and finding that such speech was not entitled to First Amendment protection).

### (2)    Speech Emanating From the Plaintiffs' Job Duties

Likewise, speech that Brydges and Scanlan made to Pisani on June 20, 2016 about Willoughby purportedly removing a handgun from the Delaware County Courthouse Evidence Room is also not protected by the First Amendment because it occurred during the course and scope of the Plaintiffs executing their official job duties.

As background, Brydges and Scanlan had confiscated a gun, and subsequently inventoried it, in connection with the arrest of a criminal defendant. (Amend. Compl. ¶ 88.) As the prosecutor was preparing for trial, he notified Brydges and Scanlan that the gun was missing. (Amend. Compl. ¶¶ 87, 88, 92.) Thus, when Brydges and Scanlan told Pisani that the gun was missing, they were taking action in connection with the prosecution of a defendant they arrested. (Amend. Compl. ¶ 88.) Supporting criminal prosecutions is part of the job duties of a police officer. *See Garcetti,* 547 U.S. at 424 (A public employee's speech "made pursuant to their official responsibilities" is not protected by the First Amendment).

Brydges' and Scanlan's speech about the missing gun was made pursuant to their job duties and was therefore not protected by the First Amendment.

**c)   Speech That Does Not Bear a Plausible Causal Connection to the Post-February 2, 2019 Alleged Retaliatory Events**

The final three instances of speech that the Plaintiffs cite as a basis for their Section 1983 claim for First Amendment retaliation are not causally connected to the alleged post-February 2, 2019 retaliatory actions.[6]  Those three instances of speech occurred at the following times: (1) "the end of the year 2014," over six years before this Action was initiated (Amend. Compl. ¶¶ 39-50); (2) August 2017, almost three-and-a-half years before this Action was initiated (Amend. Compl. ¶¶ 115- 117); and (3) in February 2018, three years before this Action was initiated (Amend. Compl. ¶¶ 121-124).  *See supra* at pp. 10-11, bullets 1, 2, and 4 for a description of these instances of relied upon speech.

Case law makes clear that causation cannot be established based on temporal proximity in this case, given the amount of time between when the Plaintiffs purportedly spoke (2014, August 2017, and February 2018) and when Willoughby allegedly retaliated against them (July/August 2019, September 2019, and August 2020).  *Brennan v. Norton*, 350 F.3d, 399, 420 (3d Cir. 2003) (holding in a Section 1983 retaliation case that a nine-month gap between the expression and alleged retaliation is not, "by itself, sufficient to preclude an inference of causation"); *see also McAndrew v. Bucks Cnty Bd. of Com'rs*, 982 F. Supp. 2d 491, 505 (E.D. Pa. 2013 ) ("six months is simply too long to infer, based on temporal proximity alone, that defendants terminated plaintiff for retaliatory reasons").

While causation can be established through evidence demonstrating a pattern of antagonism, Brydges and Scanlan have pled only a few instances of antagonistic interactions over

---

[6] Willoughby does not concede that any of this alleged speech was protected under the First Amendment.  In fact, Willoughby strongly disputes the representations Plaintiffs make about what Willoughby allegedly said to them.  Nevertheless, for purposes of this motion, Willoughby focuses on the lack of a causal connection between the Plaintiffs' speech from several years ago and the alleged retaliation that occurred after February 2, 2019.

the last six years. *See Roseberry v. City of Phila*, 716 Fed. Appx. 89, 92 (3d Cir. 2017) ("isolated events, occurring over a three-year period" insufficient to establish a pattern of antagonism for purposes of a Section 1983 retaliation claim). Even if the relationship between Willoughby and the Plaintiffs was tense, it is not plausible to think that speech from roughly three to five years earlier was the reason Willoughby purportedly took retaliatory actions in 2019 and 2020.

The speech upon which Plaintiffs rely to assert their Section 1983 First Amendment retaliation claim is not causally connected to the retaliatory events for which they have pled Willoughby was personally involved.

> **3.      Plaintiffs' Section 1983 Claim Based on Alleged Violation of Their Due Process Rights Under the Fourteenth Amendment (Count III) Must be Dismissed Because They Have Not Plausibly Pled That Willoughby Made a Stigmatizing Comment After February 2, 2019**

To state a claim under Section 1983 for deprivation of procedural due process right, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (citations omitted). "For government action to infringe the reputation, honor, or integrity of an individual, that government action first must involve a publication that is substantially and materially false." *Kane v. Chester Cnty.*, 811 Fed. Appx. 65 (3d Cir. 2020) (citations and internal quotations omitted).

Here, Plaintiffs specifically allege that they were deprived of their "liberty interest" under the Fourteenth Amendment based on Willoughby's alleged conduct and the impact to their reputations. (*See* Amend. Compl. at ¶¶ 254-266). "To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236.

"To satisfy the 'stigma' prong of the test," the plaintiff must allege "that the purportedly stigmatizing statement(s) were (1) false, and (2) made publicly." *Kane*, 811 Fed. Appx. at 69 (internal quotations omitted). In order to assess whether a statement is "stigmatizing," courts "determine[s] whether the communication complained of is capable of a defamatory meaning. *Kane,* 811 Fed. Appx. at 69. "In general, a statement that is merely an expression of opinion is not defamatory." *Id.* (internal quotations and citations omitted). "A defamatory communication in the form of an opinion is only actionable if it implies the allegation of undisclosed defamatory facts as its basis, while a simple expression of opinion based on disclosed or assumed nondefamatory facts is not actionable." *Id.* (citations and quotation omitted). The Court does not need to even analyze the "plus" component of the stigma-plus test because Plaintiffs have not pled that Willoughby made a stigmatizing comment within the limitations period.[7]

Just like a Section 1983 claim based on an alleged violation of First Amendment rights, a Section 1983 claim based on an alleged violation of Fourteenth Amendment rights is subject to a two-year statute of limitations. *See Williams v. Lawrence Cnty. Career & Tech. Cntr.,* 2017 WL 4842549 *6 at n. 10 (W.D. Pa. 2017) (noting in a case involving a Section 1983 claim based on an alleged violation of a Fourteenth Amendment right that "the statute of limitations for § 1983 claims in Pennsylvania is governed by the two-year statute of limitations for personal injury actions"). Accordingly, only speech or expressions that Willoughby made after February 2, 2019 are actionable.

There is only a single instance of alleged speech Willoughby is accused of making after February 2, 2019 that the Plaintiffs claim is defamatory: an insinuation that Willoughby told the

---

[7] Even if the Court were to find that Plaintiffs have plausibly pled that Willoughby made a stigmatizing comment, Plaintiffs cannot show that Willoughby caused harm to anything other than their reputations. *See Hill*, 455 F.3d at 236 ("reputation *alone* is not an interest protected by the Due Process Clause").

CID Detective <u>something</u> in September 2019 that implicated Plaintiffs in the burglary of Willoughby's office.  Paragraph 189 in the Amended Complaint references this purportedly stigmatizing comment and reads as follows:

> BRYDGES spoke with a CID detective who advised him that WILLOUGHBY gave a recorded statement falsely implicating PLAINTIFFS in the burglary of his office.

This averment does not plausibly assert that Willoughby made a "stigmatizing statement" because it offers zero details about what Willoughby purportedly said to the CID Detective. *See Iqbal,* 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Accordingly, Plaintiffs have not plausibly pled that Willoughby made a stigmatizing statement within the applicable limitations period.  Count III of Plaintiffs' Amended Complaint must be dismissed as to Willoughby.

> **D.     Plaintiffs' Claims Under Pennsylvania's Whistleblower Act (Count V) Must be Dismissed Because Brydges and Scanlan Have Not Plausibly Pled That Willoughby Retaliated Against Them Within the Applicable 180-Day Limitations Period**

Section 3 of the Pennsylvania Whistleblower Act provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or the appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).  The term employer has been interpreted to "encompass persons in the line of supervision of an aggrieved employee as well as agents of public bodies which include city councils and departments." *Freeman v. McKellar*, 795 F. Supp. 733, 741 (E.D. Pa. 1992) *citing* 43 Pa. Stat. Ann. § 1422; *see also Frazier*, 441 F. Supp. 3d at 76  *citing* Pa. Stat. Ann. § 1422 (an

"employer" under the Whistleblower Act can be an individual, partnership, association, or corporation).   Plaintiffs aver that "Willoughby" is an "employer" for purposes of their Whistleblower Act claim.   (Amend. Compl. ¶ 275.)

The statute of limitations for bringing a claim under the Pennsylvania Whistleblower Act is 180 days.  43 P.S. § 1424(a).  Thus, Brydges and Scanlan must cite to alleged discriminatory or retaliatory acts that Willoughby purportedly committed with respect to their "compensation, terms, conditions, location or privileges of employment" <u>after</u> August 6, 2020, 180 days prior to their Complaint being filed on February 2, 2021.  The only alleged retaliatory acts they complain about involving Willoughby occurred <u>before</u> that August 6, 2020 cutoff date.  *See* Amend. Compl at ¶ 278 setting forth the alleged retaliatory acts that Willoughby committed against them.[8]

Even if the retaliatory events that Brydges and Scanlan complain about were timely filed, the alleged whistleblowing activity they claim triggered that retaliation does not qualify as a "good faith report" of waste under the Pennsylvania Whistleblower Act.  Pursuant to that statute, a good faith report is defined as "[a] report of ... wrongdoing or waste which is made without malice or consideration of personal benefit... ."  *Allen v. City. of Phila.*, No. 1253 C.D. 219, 2019 WL 1528538 *7 (Pa. Commw. Ct.  2019).   Much of Plaintiffs' relied upon speech, such as their complaint to Pisani in August 2019 about Willoughby denying them overtime in connection with court testimony, clearly involved considerations of <u>personal</u> benefit.[9]

---

[8] While the claim that Willoughby denied them the opportunity to pursue overtime during an August 1, 2020 Black Lives Matter march (*See* Amend. Compl. at ¶¶ 190-199) is close to falling within the limitations period, close does not suffice.  *See Jackson v. Lehigh Valley Physicians Grp.*, No. Civ. A. 08-3043, 2009 WL 229756 at *5 (E.D. Pa. 2009) ("The 180-day period is mandatory and must be strictly applied").

[9] If the Court were to find that Plaintiffs have pled a plausible claim under the Pennsylvania Whistleblower Act, Brydges and Scanlan should not be permitted to pursue punitive damages for that claim.  *See generally McAndrew*, 982 F. Supp. 2d at 497 (Plaintiff conceding that he may not recover punitive damages under the Pennsylvania Whistleblower Act in response to an argument from his employer that such damages are not authorized.) While the "wherefore clause" of Count V does not purport to seek punitive damages, the "prayer for relief" statement does.

17

**E.      Plaintiffs' Tort Claims for Defamation (Count VI) and Invasion of Privacy (Count VII) Must be Dismissed Because They Were Not Brought Within the One-Year Limitations Period**

Brydges and Scanlan have asserted two claims based on alleged conduct by Willoughby that are clearly time-barred by a one-year statute of limitations: (1) defamation, and (2) invasion of privacy under a "false light" theory.[10]

**1.      Count VI Must be Dismissed Because the Plaintiffs Have not Alleged That Willoughby Published a Defamatory Comment After February 2, 2020**

Pursuant to 42 Pa. Cons. Stat § 8343(a), the elements of a defamation claim require a plaintiff to show:

> (1) the defamatory character of the communication;
> (2) its publication by the defendant;
> (3) its application to the plaintiff;
> (4) the understanding by the recipient of its defamatory meaning;
> (5) the understanding by the recipient of it as intended to be applied to the plaintiff;
> (6) special harm resulting to the plaintiff from its publication; and
> (7) abuse of a conditionally privileged occasion.

Defamation claims have a one-year statute of limitations. *See William Ghrist v. CBS Broadcasting, Inc.,* 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) *citing* 42 Pa. Const. Stat. Ann. § 5523(1) ("Pennsylvania, by statute, sets the statute of limitations for all claims sounding in defamation or invasion of privacy at one year").

Plaintiffs' defamation claim is based exclusively on the statements Willoughby provided to the CID Detective investigating the burglary of his office.  *See* Amend. Compl., Count VI at

---

[10] While Pennsylvania courts apply the "discovery rule" to statute of limitations inquiries for tort claims in certain circumstances, courts can determine, as a matter of law, that the discovery rule does not apply when the facts are so clear that "reasonable minds cannot differ as to when the limitations period commenced."  *See Knopick v. Connelly*, 639 F.3d 600, 611 (3d Cir. 2011) (citations omitted).  Given the date specificity with which Plaintiffs have pled certain events occurred in their Amended Complaint, this Court can rule as a matter of law that Plaintiffs' tort claims are time-barred.

¶¶ 288-300.  In their Amended Complaint, Plaintiffs specify that those communications occurred in September 2019.  *See* Amend. Compl. at ¶¶ 181-189.  However, Brydges and Scanlan did not file suit on that allegedly defamatory comment until February 2021, approximately seventeen months later.

Accordingly, that claim must be dismissed as time-barred.

### 2. Count VII Must be Dismissed Because Plaintiffs Have Not Alleged That Willoughby Made a Misrepresentation About Them After February 2, 2020

"The tort of false light/invasion of privacy involves publicity that unreasonably places the other in a false light before the public."  *Kleim v Cnty. of Bucks*, 275 F. Supp. 2d 628, 636-37 (E.D. Pa. 2003) (internal quotations omitted) *citing Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. 1999).  "A cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense."  *Kleim*, 275 F. Supp. 2d at 637.  The elements a plaintiff must prove are: (i) publicity, (ii) given to private facts, (iii) which would be highly offensive to a reasonable person, and (iv) which are not of legitimate concern to the public.  *Id*.

"The applicable statute of limitations for an invasion of privacy claim in Pennsylvania is one year."  *Johnson v. Anhorn*, 334 F. Supp. 2d 802 (E.D. Pa. 2004) *citing* 42 Pa. C.S. § 5523; *see also Innella v. Lenape Valley Foundation*, No. Civ. A. 14-2862, 2014 WL 4805673 *3 (E.D. Pa. 2014) ("false light" claims subject to one-year limitation set forth in 42 Pa. C.S. § 5523).

Plaintiffs' "false light" invasion of privacy claim does not specify the purported comments that Willoughby made about them that presented them in a "false light."  (*See* Amend. Compl., Count VII at ¶¶ 304 -319 failing to identify a single specific comment by Willoughby presenting

them in a false light.)  Even if one presumes that Brydges' and Scanlan's false light claim is based

on the September 2019 comment that Willoughby purportedly made to the CID Detective, such a

claim is time-barred for the same reason the Plaintiffs' defamation claim is time-barred.  *See*

Section II(E)(1) *supra.*

> **F.     Plaintiffs' Tort Claim for Intentional Infliction of Emotional Distress (Count VIII) Must be Dismissed Because Plaintiffs' Have Not Plausibly Alleged That Willoughby Engaged In Outrageous Conduct After February 2, 2019**

To succeed on an intentional infliction of emotional distress claim, Brydges and Scanlan

must allege "conduct so extreme and outrageous that it intentionally or recklessly caused [them]

severe emotional distress."  *Bock v. CVS Pharmacy, Inc.*, No. Civ. A. 07- 412, 2008 WL 3834266,

at *2 (E.D. Pa. Aug. 14, 2008).  "In Pennsylvania, '[l]iability on an intentional infliction of

emotional distress claim has been found only where the conduct has been so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community.'"  *Lawson v. Pa. SPCA*,

124 F. Supp. 3d 394 (E.D. Pa. 2015) *citing Kasper v. Cnty. of Bucks*, 514 Fed. Appx. 210, 217 (3d

Cir. 2013) (internal citations and quotations omitted).

In Count VIII, Plaintiffs cite to three events that they claim constitute outrageous conduct:

(1) Willoughby threatening to reveal their identities by posting their pictures in a local newspaper,

(2) Willoughby making a comment suggesting people from Chester would inflict physical harm

on them, and (3) Willoughby making a representation to the CID Detective "implicating" them in

the burglary of his office.  (Amend. Compl. ¶¶ 323-329.)

As to the allegations about revealing their identities and suggesting that people from

Chester would inflict harm on the Plaintiffs, those allegations are subject to 42 Pa. C. S. § 5524's

two-year limitations period.  *See Addelespurger v. Wecht*, No. Civ. A. 16-1157, 2018 WL 1412409

*6 (W.D. Pa. 2018) *citing* 42 Pa. C. S. § 5524 (state law claim of intentional infliction of emotional distress has a two-year limitation period).

As explicitly represented in Plaintiffs' Amended Complaint, Brydges learned that the identity of the confidential informant may have been disclosed on March 13, 2018, and that he suspected Willoughby was the person who made that disclosure. (Amend. Compl. ¶¶ 133-136.) March 13, 2018 was almost three years prior to Plaintiffs initiating this Action. Likewise, Brydges learned of the allegation that Willoughby told a Detective in Chester's police department that he was going to have people from Chester "get" Brydges and Scanlan on May 3, 2018. (Amend. Compl. ¶¶ 150-156.) This was just under 33 months before Plaintiffs initiated this Action. Both of the allegations are barred by the limitations period set forth in 42 Pa. C. S. § 5524.

With respect to the alleged harm caused by the unidentified comment Willoughby purportedly made to the CID Detective, that allegation is subject to the same one-year limitations period that applies to defamation and false light claims. *See Ghrist*, 40 F. Supp. 3d at 630 ("Pennsylvania state and federal courts have further held that the same one-year limitations period extends to any other tort claim based on a harmful publication, no matter the label placed on the cause of action"); *see also Tucker v. MTS, Inc.,* No. Civ. A. 97-4717, 1998 WL 67527 *3 (E.D Pa. 1998) *aff'd,* 229 F.3d 1139 (3d Cir. 2000) (concluding that the plaintiffs' emotional distress claim exists solely because of various defendants' roles in disseminating allegedly defamatory statements and as such, it is subject to the statute of limitations for defamation). The comments Willoughby made to the CID Detective are time-barred for the intentional infliction of emotional distress claim for the same reasons they are time-barred with respect to the defamation and false light claims. *See* Section II(E) *supra.*

Accordingly, Plaintiffs' intentional infliction of emotional distress claim is not based on events that occurred within the applicable limitations period. As such, Count VIII must be dismissed.

**G.      Plaintiffs' Civil Conspiracy Claim Must be Dismissed Because Plaintiffs Have Not Plausibly Pled that Willoughby Acted in Concert With Pisani, Willert, and Ryan**

"Under Pennsylvania law, '[t]he essential elements of a claim for civil conspiracy are: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Dice v. Johnson,* 711 F. Supp. 2d 340, 358 (M.D. Pa. 2010) *citing Phillips v. Selig,* 959 A.2d 420, 437 (Pa. Super. Ct. 2008).

The statute of limitations for civil conspiracy in Pennsylvania is two years. 42 Pa. C.S. § 5524(7). Because a civil conspiracy claim is derivative of the other causes of action, and Willoughby has identified statute of limitations (or causation) issues with all of the other causes of action, a finding that those other counts should be dismissed, necessitates the dismissal of the conspiracy count as well. *See Accurso v. Infra-Red Services, Inc.*, 23 F. Supp. 3d 494 (E.D. Pa. 2014) *citing Goldstein v. Phillip Morris, Inc.* 854 A.2d 585, 590 (Pa. Super. Ct. 2004) ("Pennsylvania law mandates that "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act").

Notwithstanding Willoughby's prior arguments, all of which are incorporated by reference into this section, Plaintiff has not plausibly pled that Willoughby was involved in a conspiracy. As it relates to the misconduct Willoughby is alleged to have engaged in, there is no meaningful reference to other Individual Defendants in those factual narratives. *See generally* Section II(C)(1) *supra.* Plaintiffs' assertion that Willoughby conspired with other Individual Defendants to commit

22

those purported improper acts constitutes impermissible "threadbare conclusions."  *See generally*

Amend. Compl., Count IX at ¶¶ 334-347; *see also Iqbal*, 556 U.S. at 663 (when ruling on a motion

to dismiss, "mere conclusions, are not entitled to the assumption of truth").

    Plaintiffs have not plausibly alleged that Willoughby conspired with the other Individual

Defendants.

### H.    Willoughby is Immune from Suit for Actions he Took as the Captain of the Ridley Township Police Department

    Brydges and Scanlan sued Willoughby in his personal capacity even though all of their

legal claims against him cite to actions he took as the Captain of the Ridley Township Police

Department.  Despite the Plaintiffs' improper attempt to hold Willoughby, and other Individual

Defendants, personally liable for Ridley Township's decision to disband the ACU, "[g]overnment

officials are immune from suit when their actions do not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Jaglowicz v. Bethel*

*Township*, 178 F. Supp. 3d 262, 270-71 (E.D. Pa. 2016) *citing Hope v. Pelzer*, 536 U.S. 730, 739,

122 S. Ct. 2508 (2002) (internal quotations omitted); *see also Pearson v. Callahan*, 555 U.S. 223,

236, 129 S. Ct. 808 (2009) ("[q]ualified immunity is applicable unless the official's conduct

violated a clearly established right").

    Qualified immunity "insulate[s] government officials from liability for assumable damages

when the discretionary conduct of that official did not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Frazier,* 441 F. Supp. 3d

at 94 *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  "To deny immunity,

there must be sufficient precedent at the time of the action to put the official on notice that his or

her conduct was prohibited." *Jaglowicz* 178 F. Supp. 3d at 271 (citations and quotations omitted).

As set forth in Section II(C) *supra*, Plaintiffs' claims are not based on a "clearly established"

constitutional right as their purported speech was not protected by the First Amendment and Willoughby's alleged comments about them were not sufficiently stigmatizing so as to violate their liberty interests under the Fourteenth Amendment.

As to claims based on alleged violations of Pennsylvania law, Pennsylvania's Political Subdivision Tort Claims Act provides municipal employees, such as Willoughby, with immunity for acts committed within the scope of their employment. *See Sanford v. Stiles,* 456 F.3d 298, 315 (3d Cir. 2006) *citing* 42 Pa. Cons. Stat. § 8545.  While such immunity is not available for conduct that amounts to actual malice or willful misconduct, Plaintiffs' allegations that Willoughby's conduct was malicious or willful are unsubstantiated.  Notwithstanding the intentional tort labels Brydges and Scanlan used to describe Willoughby's purported conduct, the events they complain about all pertain to actions Willoughby allegedly took as the Captain of the Ridley Township Police Department.   Accordingly, Willoughby, who has been serving the public as a law enforcement officer for three decades, is entitled to immunity under Pennsylvania's Political Subdivision Tort Claims Act.

III.   **CONCLUSION**

Plaintiffs' claims against Willoughby must be dismissed because they have not plausibly alleged that Willoughby was involved in disbanding the ACU.  Moreover, the majority of the conduct they rely upon to assert their claims is barred by various statutes of limitations.  That conduct for which they have timely alleged Willoughby's personal involvement simply does not support plausible legal claims.

Willoughby respectfully requests that the Court grant his Motion to Dismiss Plaintiffs' Amended Complaint.

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

Date:  April 27, 2021            By: */s/  Marc S. Raspanti*
                                 Marc S. Raspanti, Esquire
                                 Douglas K. Rosenblum, Esquire
                                 Joseph L. Gordon, Esquire
                                 1818 Market Street, Suite 3402
                                 Philadelphia, PA  19103
                                 *msr@pietragallo.com*
                                 *dkr@pietragallo.com*
                                 *jlg@pietragallo.com*
                                 (215) 988-1475 (Telephone)
                                 (215) 754-5173 (eFax)

                                 *Attorneys for Defendant,
                                 Scott Willoughby*