**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Sean Brydges and Gerard Scanlan | Civil Action |
| vs. | No. 2:21-cv-00492 |
| Ridley Township | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT RIDLEY
TOWNSHIP'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ........................................................................... 1

FACTUAL BACKGROUND ................................................................. 1

ARGUMENT ............................................................................... 5

I.   Punitive damages are available against the Township under the Whistleblower
     Law ................................................................................. 5

II.  Plaintiffs state a Whistleblower Law claim ........................................... 6

     A.   The Township claims that there was no adverse employment action
          against Plaintiffs by creating its own facts in contradiction of this Court's
          standard of review ............................................................. 6

     B.   The Township's "good faith" argument is baseless and unreviewable on
          the pleadings alone ............................................................ 9

III. Plaintiffs state a § 1983 claim ...................................................... 12

     A.   Plaintiffs state a valid First Amendment claim on the merits ................... 12

     B.   Plaintiffs have a valid due-process claim, although we agree that the only
          remedy is a name-clearing hearing ............................................ 16

          i.    The Township's "no stigma" argument ignores the totality of
                Plaintiffs' pleading ..................................................... 16

          ii.   The Township's "plus" argument ignores the facts ...................... 17

     C.   Plaintiffs' allegations show the existence of a municipal custom sufficient
          to create *Monell* liability .................................................. 18

IV.    This Court should grant leave to amend to the extent that it finds any defects in Plaintiffs' pleading .................................................................. 22

V.    The Township apparently mistakenly asserted a statute-of-limitations defense only in its Conclusion without any further development of that argument ............ 22

CONCLUSION ................................................................................. 23

TABLE OF AUTHORITIES

**Cases**

*Abuomar v. Pa. Dep't of Corr.*,
No. 4:14-CV-1036, 2015 WL 2073783 (M.D. Pa. May 4, 2015) ........................... 10

*Andrews v. City of Philadelphia*,
895 F.2d 1469 (3d Cir. 1990) ....................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................... 7

*Azzaro v. County of Allegheny*,
10 F.3d 968 (3d Cir. 1997) ....................................................... 15

*Baker v. Benton Area Sch. Dist.*,
418 F. Supp. 3d 17 (M.D. Pa. 2019) ............................................... 10

*Baloga v. Pittston Area Sch. Dist.*,
927 F.3d 742 (3d Cir. 2019) .................................................. 12, 19

*Beck v. City of Pittsburgh*,
89 F.3d 966 (3d Cir.1996) ................................................... 19, 21

*Berg v. County of Allegheny*,
219 F.3d 261 (3d Cir. 2000) ...................................................... 19

*Bielevicz v. Dubinon*,
915 F.2d 845 (3d Cir. 1990) ...................................................... 21

*Connick v. Myers*,
461 U.S. 138 (1983) .............................................................. 15

*De Ritis v. McGarrigle*,
861 F.3d 444 (3d Cir. 2017) ...................................................... 13

*DeBenedictis v. Merrill Lynch & Co.*,
492 F.3d 209 (3d Cir. 2007) ....................................................... 7

*Dee v. Borough of Dunmore*,
549 F.3d 225, (3d Cir. 2008) ..................................................... 18

*Feldman v. Phila. Housing Auth.*,
43 F.3d 823, 826 (3d Cir. 1994) ................................................... 5

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
  482 F.3d 247 (3d Cir. 2007) ......................................................... 22

*Flora v. County of Luzerne*,
  776 F.3d 169 (3d Cir. 2015) ......................................................... 14

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ......................................................... 10

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ............................................................... 12–13

*Givhan v. Western Line Consol. Sch. Dist.*,
  439 U.S. 410 (1979). .............................................................. 15

*Hill v. Borough of Kutztown*,
  455 F.3d 225 (3d Cir. 2006) ......................................................... 17

*Javitz v. County of Luzerne*,
  940 F.3d 858 (3d Cir. 2019) ...................................................... 14–15

*Johnson v. City of Philadelphia*,
  975 F.3d 394 (3d Cir. 2020) ......................................................... 18

*Miller v. Helm*,
  No. 4:17-CV-01590, 2017 WL 6405738 (E.D. Pa. Dec. 15, 2017) ...................... 10

*Monell v. Dep't of Social Servs.*,
  436 U.S. 658 (1978) ............................................................ 12, 18

*Monsanto v. Quinn*,
  674 F.2d 990 (3d Cir.1982). ......................................................... 15

*Moore v. City of Philadelphia*,
  461 F.3d 331 (3d Cir. 2006) .......................................................... 9

*Palardy v. Township of Millburn*,
  906 F.3d 76 (3d Cir. 2018) ...................................................... 12–13

*Paul v. Davis*,
  424 U.S. 693 (1976) ................................................................ 17

*Pickering v. Bd. of Educ.*,
  391 U.S. 563, 568 (1968) ........................................................... 12

*Rankin v. City of Philadelphia*,
  963 F. Supp. 463 (E.D. Pa. 1997) (Brody, J.) ........................................ 5

*Santiago v. Warminster Township,*
  629 F.3d 121 (3d Cir. 2010) ....................................................... 19–20

*See Smith v. Borough of Dunmore,*
  633 F.3d 176 (3d Cir. 2011) ....................................................... 18

*Silva v. Worden,*
  130 F.3d 26 (1st Cir. 1997) ....................................................... 19

*Thomas v. Cumberland County,*
  749 F.3d 217 (3d Cir. 2014) ....................................................... 18

*Vasil v. Dep't of Mil. & Veterans Affs.,*
  230 A.3d 529 (Pa. Commw. Ct. 2020) (Brobson, J.) ........................................ 7

*Zamboni v. Stamler,*
  847 F.2d 73 (3d Cir. 1988) ....................................................... 15

**Statutes**

42 U.S.C. § 1983 ....................................................... 12

18 Pa. Cons. Stat. § 3921 ....................................................... 15

18 Pa. Cons. Stat. § 4910 ....................................................... 15

Act 111 ....................................................... 18

43 Purdon's Stat. § 215.2 ....................................................... 18

Pennsylvania Whistleblower Law
  43 Purdon's Stat. § 1422 ....................................................... 11
  43 Purdon's Stat. § 1423 ....................................................... 6, 9

First Class Township Code
  53 Purdon's Stat. § 55701 ....................................................... 20
  53 Purdon's Stat. § 55803-A ....................................................... 20
  53 Purdon's Stat. § 56401 ....................................................... 20
  53 Purdon's Stat. § 56401.1 ....................................................... 20
  53 Purdon's Stat. § 56405 ....................................................... 20
  53 Purdon's Stat. § 56708 ....................................................... 20
  53 Purdon's Stat. § 57503-A ....................................................... 20

**Rules**

Fed. R. Civ. P. 15 ....................................................... 22

## INTRODUCTION

Defendant Ridley Township's Rule 12(b)(6) motion is consistently subject to the same problem. It reimagines Plaintiffs' allegations, creates strawmen, and substitutes its own facts for those that Plaintiffs pled. But the Township cannot do that. It must save its factual claims for later, at summary judgment or trial. On the facts actually pled, the Township's arguments lack merit except as to the remedy available for Plaintiffs' due-process claim.

There is no call to kick this case involving disturbing abuse of police officers who were just trying to do their job — just trying to report police wrongdoing to the right authorities — on the pleadings alone.

## FACTUAL BACKGROUND

Plaintiffs Sean Brydges and Gerard Scanlan are Ridley Township police officers. Together, they constituted the Township's Anti-Crime Unit, a special investigative unit. Plaintiffs made numerous narcotics arrests, often seizing drugs and cash. The Township's procedures took special care to ensure accurate records and custody of cash. (Doc. 17: Amend. Compl. at ¶¶ 9–12, 34–38).

They learned that their direct supervisor, Captain Scott Willoughby, was tampering with evidence. The Criminal Investigation Division was investigating cash and other property missing from evidence. It turned out that Willoughby was responsible. During the investigation, he asked Plaintiffs to help him conceal his theft of cash from evidence. Willoughby sought to conceal the theft by replacing the stolen funds with separate money obtained from who knows where. He asked Plaintiffs to re-package evidence even though that would break the chain of custody. They would not do so. (*Id.* at ¶¶ 20–26, 40–46).

Plaintiffs reported Willoughby's conduct to the Township's Manager Edward Pisani. Pisani told them that he would report the incident to the township's Police Commissioner, Robert J. Willert. Willert is also the President of the Township's Board of Commissioners. (*Id.* at ¶¶ 14, 47). The Board is the Township's executive decisionmaker.

Plaintiffs met with both Pisani and Willert. Plaintiffs were worried that Willoughby would retaliate against them. Pisani and Willert reassured Plaintiffs that they would not make Willoughby aware of the report. (*Id.* at 48–50).

Instead, Pisani told Willoughby about the report. Within two days, Willoughby was irate when he spoke with Plaintiffs. He took away their access to take-home vehicles, a decision Willert would later reverse. (*Id.* at 51–57).

In February 2016, Plaintiffs learned of additional misconduct. They participated in a nuisance-bar raid. It appeared to Plaintiffs that someone had tipped off the bar. At the same time, Willert was acting strangely and avoiding interacting with the nuisance-bar detail. Plaintiffs discussed the matter with Manager Pisani. Pisani discovered that Willoughby had called the bar before the raid. Again, Plaintiffs did the right thing. They asked Pisani to report the information to Commissioner Willert or to investigate. Plaintiffs do not believe that Pisani did anything. (*Id.* at 58–69).

In May 2016, Plaintiffs again learned of more misconduct. They learned that Willoughby again stole cash from evidence in one of their cases. This time, Willoughby acted to falsely implicate Plaintiffs. He asked another police officer to write and backdate a report. He did so. That report falsely blamed the discrepancy on Plaintiffs' supposed miscounting of the cash in the first place. (*Id.* at ¶¶ 70–79).

Willoughby continued to attack Plaintiffs' reliability. He falsely accused them of exaggerating their arrest records and so exaggerating their effectiveness and success. (*Id.* at ¶¶ 80–86).

To try to make his false narrative real, Willoughby began to interfere with Plaintiffs' ability to prosecute cases. In June 2016, Plaintiffs learned that Willoughby took criminal evidence from one of their cases. Plaintiffs learned that Willoughby ordered other police officers not to return the missing evidence. The only apparent purpose of this act would be to threaten the viability of the prosecution. Willoughby also ordered officers not to help Plaintiffs by, for instance, transporting evidence to court or to forensic labs or documenting the chain of custody. (*Id.* at ¶¶ 87–104).

Willoughby's pattern of misconduct continued. He tried to abuse his position. He asked Plaintiffs to lie to a district attorney by falsely claiming that his friend's employee was a cooperator. Willoughby wanted to help out the friend's employee as payment in kind for home-improvement services that his friend had provided to him. Plaintiffs refused. (*Id.* at ¶¶ 115–120).

Similarly, Willoughby asked Plaintiffs to lie again to help get his daughter's boyfriend out of marijuana possession charges. Again, Plaintiffs refused. They did the right thing again. They reported this misconduct to superiors. (*Id.* at 121–27).

After that, Willoughby's retaliation got more serious. Plaintiffs had a reliable and effective confidential informant. Willoughby knew that. He disclosed the informant's identity to a defense-attorney friend of his. (*Id.* at ¶¶ 128–136). The revelation of a confidential informant's identity, of course, threatens that informant's work and safety. It also threatens Plaintiffs' reputation for trustworthiness when they deal with other potential informants. Nobody would want to be so outed. Nobody could trust a police officer who would allow that to happen.

Willoughby also acted to prevent Plaintiffs from working overtime. In doing so, he told other police officers that he intended to "get" Plaintiffs — meaning to retaliate against them. (*Id.* at ¶¶ 137–149).

Even worse, Willoughby threatened to endanger Plaintiffs. Plaintiff Brydges worked undercover. Willoughby threatened to post his picture to the public to reveal his identity. He also

threatened to have people he knew from Chester to attack the Plaintiffs, or perhaps even kill them. (Id. at ¶¶ 150–158).

Plaintiffs became deeply concerned. They did not believe that Willoughby was making idle threats. Instead, they had concerns about their safety and the safety of their families. For instance, Plaintiff Brydges purchased security cameras for his house. (Id. at ¶¶ 159–160).

Plaintiffs took steps to address their concerns. They again spoke to Manager Pisani and Commission Willert. Pisani and Willert acknowledged that Willoughby had admitted to making the threats. Plaintiffs explained that they could not work under Willoughby given his abuse and threats. (*Id.* at ¶¶ 161–165).

Pisani and Willert claimed that they would address the situation. Instead, Willert and Pisani told other police officers that Plaintiffs' claims were baseless. (*Id.* at ¶ 166).

Willoughby continued to retaliate against Plaintiffs. In July 2019, he tried to prevent them from receiving overtime pay, although that decision was later reversed after Plaintiffs filed a grievance and spoke with Manager Pisani. Pisani also reassured Plaintiffs that he would talk to Commissioner Willert to help end Willoughby's retaliation. (*Id.* at ¶¶ 167–80).

The retaliation did not end. Willoughby claimed that someone burglarized his office. He falsely implicated Plaintiffs. (*Id.* at 181–189). Willoughby also took yet more steps to deny Plaintiffs' overtime by preventing them from serving during an August 2020 protest. (*Id.* at ¶¶ 190–199).

The pattern of retaliation culminated in December 2020. Plaintiffs learned of an on-going federal criminal investigation of Township officials. Commissioner Willert believed that Plaintiffs were responsible for the investigation by providing the information that led to the federal investigation. (*Id.* at ¶¶ 200–202).

Willert decided to personally participate in the retaliation. He advanced a purported reorganization of the Police Department. Under that plan, the Department disbanded Plaintiffs' Anti-

Crime Unit. Plaintiffs were transferred to a patrol division and demoted to the rank of Patrolman. Even though the agreements between Ridley Township and the police union requires demotion only for "just cause," Plaintiffs received no process prior to demotion. (*Id.* at ¶¶ 203–215, 262).

During all of this time, Commissioner Willert was aware of everything that was happening to Plaintiffs. Yet he did nothing to stop the abuse. While he acted on the margins, such as by restoring their use of "take home" vehicles and addressing some of the overtime issues, he did not meaningfully act. Instead, he furthered the retaliation against Plaintiffs through the purported restructuring of the Police Department.

**ARGUMENT**

### I.    Punitive damages are available against the Township under the Whistleblower Law.

The Township incorrectly claims that none of Plaintiffs' claims could possibly justify an award of punitive damages against the Township. Supposedly, none of Plaintiffs' claims can support an award of punitive damages against a municipality.

But the Township is wrong. The Third Circuit has already found that punitive damages are available for a violation of Pennsylvania's Whistleblower Law. *Feldman v. Phila. Housing Auth.*, 43 F.3d 823, 826, 833 (3d Cir. 1994) ("Plaintiff . . . claims the defendant . . . violated the First and Fourteenth Amendments of the Constitution of the United States, as well as the State of Pennsylvania's 'whistleblower' statute . . . Punitive damages are authorized on Feldman's federal and state law claims."). *But see Rankin v. City of Philadelphia*, 963 F. Supp. 463, 479 (E.D. Pa. 1997) (Brody, J.) (finding that the Third Circuit's decision in *Feldman* was "unclear" and declining to apply it).

Plaintiffs can maintain a claim for punitive damages against the Township under the Whistleblower Law. We are not seeking punitive damages against the Township on any other claim beside

## II.        Plaintiffs state a Whistleblower Law claim.

The Township makes two incorrect arguments about Pennsylvania's Whistleblower Law. It first claims that the Township did not "discharge, threaten or otherwise discriminate or retaliate against" Plaintiffs (collectively, "adverse employment actions"). Next it claims that Plaintiffs made no "good faith report" of misconduct. We address those arguments in turn.

### A.        The Township claims that there was no adverse employment action against Plaintiffs by creating its own facts in contradiction of this Court's standard of review.

Under Pennsylvania's Whistleblower Law, "no employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report." Act of Dec. 12, 1986, P.L. 1559, No. 169, § 3, *informally codified at* 43 PURDON'S STAT. § 1423(a).[1] The Township ignores Plaintiffs' pleading and relies on its own supposed facts not of record to claim that it took no adverse employment action against Plaintiffs.

But Plaintiffs alleged that the Township demoted them to patrolman. (Doc. 17: Amend. Compl. ¶¶ 229–30). By *itself*, that is enough to reject the Township's argument. A demotion alone is sufficient to establish an adverse employment action under the Whistleblower Law. Even a *lateral transfer* can be sufficient. In construing the Whistleblower Law, Pennsylvania courts look to federal

---

[1] The Whistleblower Law is not contained in Pennsylvania's consolidated statutes. Subsequently, we refer to it by citation to Purdon's compilation of Pennsylvania's unconsolidated statutes.

caselaw interpreting Title VII. *Vasil v. Dep't of Mil. & Veterans Affs.,* 230 A.3d 529, 538 (Pa. Commw. Ct. 2020) (Brobson, J.). In doing so, the Commonwealth Court recognizes that "[a]dverse employment actions may include demotion and transfers to less desirable positions." *Id.* Relying on that rule, the Commonwealth Court has found that demotion constitutes an adverse employment action actionable under the Whistleblower Law. *See id.* (finding that the plaintiff's removal from his position of Medical Director was an adverse employment action sufficient to support liability under the Whistleblower Law).

The Township offers no contrary legal analysis. Instead, the Township disagrees on the sole apparent basis that it claims that the demotion allegation is "false." But the Township must accept our factual allegations at face value in making a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint's "factual matter" must be "accepted as true"). Bizarrely, the Township's own brief recognizes this principle despite later contradicting it, explaining that "the Court must 'accept as true all allegations in the complaint.' " (Br. 2) (citing *DeBenedictis v. Merrill Lynch & Co.,* 492 F.3d 209, 215 (3d Cir. 2007)).

The Township can argue that Plaintiffs' allegations are false only later, at summary judgment or trial. The Township cites not a single case permitting this Court to review the supposed falsity of a simple fact such as the existence of a demotion on the pleadings alone. Nor are we aware of any.

The Township appears to be confused about its own demotion of Plaintiffs. Plaintiffs attached to their pleading a "Bulletin" transferring them from the Anti-Crime Unit to "platoons." But Plaintiffs were not merely laterally transferred. Instead, as a necessary part of the transfer, Plaintiffs were demoted to the rank of Patrolman, as we alleged. (Doc. 17: Amend. Compl. at ¶ 215).

Next, the Township argues that Plaintiffs suffered no other threat, discrimination, or retaliation. To do that, the Township concocts its own version of the facts. It claims that it merely "restructured"

– 7 –

its Police Department — coincidentally harming Plaintiff. But, again, the Township's version of the facts does not matter here. What matters are Plaintiffs' allegations.

Under Plaintiffs' allegations, they suffered profound threats, discrimination, and retaliation for their report of misconduct even setting aside the demotion as follows:

- Willoughby ordered Plaintiffs to falsify police records to conceal a break in the chain of custody of evidence in a criminal case. (Amend Compl. ¶ 44).

- Willoughby denied Plaintiffs' the use of take-home vehicles. (Amend. Compl. ¶ 53).

- Police employees falsely claimed that Plaintiffs had miscounted seized funds to conceal Willoughby had stolen seized cash. (Amend. Compl. ¶ 79).

- Willoughby ordered subordinates to falsely police records to falsely claim that Plaintiffs were not diligent employees. (Amend. Compl. ¶ 80).

- Willoughby interfered in Plaintiffs' criminal investigations to prevent Plaintiffs from successfully presenting evidence and securing convictions from their investigations. (Amend. Compl. ¶¶ 87–111).

- Willoughby ordered Plaintiffs to lie to an assistant district attorney in connection with a criminal investigation. (Amend. Compl. ¶¶ 115–120).

- Willoughby ordered Plaintiffs to lie to other police officers to help his daughter's boyfriend escape criminal charges. (Amend. Compl. ¶¶ 121–126).

- Willoughby disclosed the identify of Plaintiffs' confidential informant, threatening the informant, Plaintiff's ability to use the informant, and Plaintiffs' reputation for trustworthiness and appropriate use of informants. (Amend. Compl. ¶¶ 128–136).

- Willoughby tried to deny Plaintiffs' opportunities for overtime. (Amend. Compl. ¶ 139, 167–178).

- Willoughby threatened to use third parties to physical assault Plaintiffs, causing Plaintiffs to be afraid for the physical safety of themselves and their families. (Amend. Compl. ¶¶ 153–160, 195).

- Willoughby falsely accused Plaintiffs of burglarizing his office. (Amend. Compl. ¶ 189).

- Police employees launched discriminatory investigations into Plaintiffs for the purpose of degrading the perceived quality of their work in connection with the reorganization of the Police Department and ultimately harming their pay, career, and reputation. (Amend. Compl. ¶¶ 217–233).

These actions are sufficient to establish an adverse employment action actionable under the Whistleblower Law. Under analogous Title VII caselaw, the creation of a hostile workplace is an adverse employment action. *See, e.g., Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (recognizing that a "hostile workplace environment" can cause the necessary "adverse employment action" to make out a Title VII retaliation claim). Here, Plaintiffs' pleading outlines a truly miserable workplace environment.

Were all the other wrongs not enough, Plaintiffs' direct supervisor ***threatened to have them assaulted*** or maybe even killed. Further, while this fact was not included in Plaintiffs' pleading — but could of course be added by amendment — they have been diagnosed with medical conditions resulting from their mistreatment and are now seeking the equivalent of workers' compensation for those injuries. While the Township might challenge Plaintiffs' position later, their pleading amply sets forth the necessary allegations to show a hostile workplace.

### B.   The Township's "good faith" argument is baseless and unreviewable on the pleadings alone.

The Whistleblower law protects employees who "make[] a good faith report . . . to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer." 43 PURDON'S STAT. § 1423(a). Plaintiffs' pleading amply alleges that they made such a report. Plaintiffs reported Willoughby's tampering with evidence. Not surprisingly, the Township does not deny that Willoughby's actions are reportable "wrongdoing."

The Township instead argues only, and incorrectly, that Plaintiffs did not act in "good faith." Supposedly, Plaintiffs' motivations were instead "personal" "to save the Anti-Crime Unit and their positions within that unit." But this argument again asks this Court to accept the Township's factual arguments on the pleadings. The Township asks this Court to decide, supposedly as a matter of law,

what Plaintiffs' intentions were in reporting Willoughby's tampering with evidence and subsequent complaints about the retaliatory conduct that they suffered.

The Township's arguments are for a jury, not for resolution on the pleadings. In ruling on a 12(b)(6) motion, this Court considers Plaintiffs' allegations in the "light most favorable to the plaintiffs." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This Court further draws all reasonable inferences in favor of plaintiffs. *Id.* The Township asks this Court to instead draw all inferences *against* Plaintiffs, imagining what their intent was in reporting Willoughby's misconduct.

But that is not what courts do. Even setting aside the fact that the Township's argument contradicts the *Twombly* standard, trial courts reject the Township's argument in the specific context of a Whistleblower Law claim. Where plaintiffs make "plausible" reports of wrongdoing, trial courts assume on the pleadings that those claims were made in good faith. *E.g. Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 56 (M.D. Pa. 2019); *see also Miller v. Helm*, No. 4:17-CV-01590, 2017 WL 6405738, *6 (E.D. Pa. Dec. 15, 2017) ("Mr. Miller has not pled his rationale behind, or motivation for, making his reports, but at this stage of the proceedings, before the development of any factual record, this Court can—and therefore must—infer that the reports were made "without malice or consideration of personal benefit.' "); *Abuomar v. Pa. Dep't of Corr.*, No. 4:14-CV-1036, 2015 WL 2073783, at *6 (M.D. Pa. May 4, 2015) ("[A] conclusive determination as to whether Plaintiff made his report of wrongdoing with malice or consideration of personal benefit [by motion for judgment on the pleadings] would be premature.").

Plaintiffs' reports that Willoughby tampered with evidence and that they suffered retaliation as a result is "plausible." This Court should therefore draw the inference that Plaintiffs' report was made in good faith without any further consideration of the facts.

Even setting aside the frivolity of the Township's request that this Court read Plaintiffs' mind on the pleadings alone and improperly draw inferences against them, the Township's argument makes

no factual sense. When Plaintiffs reported Willoughby's misconduct, there were no plans to eliminate the Anti-Crime Unit or Plaintiffs position in it. Those plans arose only later, when the Defendants chose to retaliate against Plaintiffs *because* they reported Willoughby's misconduct. The "restructuring" of the Police Department — which in the Township's apparent view just coincidentally happened to harm Plaintiffs — occurred *after* Plaintiffs' reported Willoughby's misconduct.

The Township's argument is temporally absurd. Plaintiffs reported Willoughby's misconduct years before the future "restructuring" of the Police Department to eliminate the Anti-Crime Unit that occurred in early 2021. The subsequent elimination of the Anti-Crime Unit could not possibly have been Plaintiffs' motivation for reporting Willoughby's misconduct years before the restructuring occurred.

Moreover, in addition to its glaring procedural and factual defects, the Township's argument is also grossly deficient. A report is made in "good faith" so long as it is made "without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 PURDON'S STAT. § 1422. The Township's only argument is that Plaintiffs supposedly considered their "personal benefit" in making a report. Yet the Township says not one word about what "personal benefit" means within the meaning of § 1422 or cite a single case illustrating how courts apply it.

The Township just throws the kitchen sink at Plaintiffs. It makes us work to diligently research the issues before this Court and provide the detailed legal argument that the Township should have provided in the first place. The Township's perfunctory argument does not justify dismissal.

### III.       Plaintiffs state a § 1983 claim.

The Township challenges Plaintiffs' claims under 42 U.S.C. § 1983 on three bases. It challenges the substantive basis of the First Amendment and Due Process Clause claims. Then it challenges the sufficiency of Plaintiff's allegations to establish municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). We address those arguments in turn.

### A.       Plaintiffs state a valid First Amendment claim on the merits.

A First Amendment retaliation claim requires a plaintiff to prove that: "(1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Palardy v. Township of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018)) (internal quotation marks omitted).

The Township challenges only the first element, whether Plaintiffs "engaged in constitutionally protected conduct." Because Plaintiffs are public employees, special requirements apply to that element of a retaliation claim.

While public employees do not "surrender" their First Amendment rights merely because they work for the government, *id.* at 753 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)), public employers have some room to regulate employee speech. In assessing whether an employer acted lawfully, courts balance "the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)) (cleaned up).

– 12 –

A three-prong test applies to assessing this balance. The Third Circuit asks: "(1) whether the employee spoke as a citizen; (2) whether the statement involved a matter of public concern; and (3) whether the government employer nevertheless had 'an adequate justification for treating the employee differently from any other member of the general public' based on its needs as an employer. *Id.* (quoting *Palardy*, 906 F.3d at 81). These prongs are all necessary elements of a claim. *See id.* at 753–59.

The Township profoundly misunderstands the law. The Township challenges only the first prong — whether Plaintiffs "spoke as [citizens]." Under that element, the First Amendment does not protect employee speech "pursuant to their job duties." *De Ritis v. McGarrigle*, 861 F.3d 444, 453 (3d Cir. 2017) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

For instance, if White House Press Secretary Jen Psaki got up on the podium and informed the public that Joe Biden was not actually the President based on "Q Anon" conspiracy theories, the Biden administration could fire her. The First Amendment would not bar that. The federal government pays Ms. Psaki to deal with the press. It can restrict how she carries out her job duties.

Without citing a single case to that effect, the Township in contrast believes that what controls is whether Plaintiffs' speech was about their job. But whether an employee spoke "within the office" is not controlling. *Id.* Employees can receive protection for "expressions made at work." *Garcetti*, 547 U.S. at 420.

To distinguish whether an expression made at work is "within the scope of the employee's duties, courts must make a "practical inquiry." *Garcetti*, 547 U.S. at 424. There are not hard-and-fast rules.

*De Ritis* illustrates how this Court should conduct that inquiry. There, a public defender was transferred to the juvenile-court unit. The defender believed that the transfer was punishment for failing to induce enough clients to plead guilty. The defender shared this "rumor" while physically

present in court but prior to the commencement of on-record proceedings. The defender also met with the County Solicitor and the chairman of the County Council in private to complain.

The Third Circuit explained that the in-court statements were part of the defender's duties, but the complaints to the Solicitor and to the chairman were not. Part of the defender's job was to "build rapport" with courts and opposing counsel. Sharing a rumor in court, even off the record, affected those duties. Moreover, the off-the-record statements could have an effect on the proceedings in which the defender was involved. As a result, sharing "rumors" while in court was not "citizen" speech. In contrast, discussing those "rumors" outside of court *was* "citizen" speech even though made to the defender's superiors. The defender's complaints to superiors were not what he "was paid to perform on an ordinary basis."

Applying similar reasoning here, Plaintiffs' report of misconduct is not speech as a citizen. The Township does not pay Plaintiffs to make complaints about the malfeasance of others. They are not the Inspectors General of Ridley Township. They are police officers. They reported Willoughby's misconduct and retaliation to superiors. That is much like the defender's complaints to superiors that the Third Circuit found to be citizen speech in *De Ritis*.

In addition, there is an entirely separate and distinct legal principle that makes clear that Plaintiffs' spoke as citizens. The First Amendment protects a public employee's report of "malfeasance or misfeasance." *Javitz v. County of Luzerne*, 940 F.3d 858, 864 (3d Cir. 2019). The "speak as a citizen" element does not defeat internal reports of malfeasance or misfeasance. Reporting wrongdoing is not "within the realm" of an employee's "ordinary job duties." *Id.* (quoting *Flora v. County of Luzerne*, 776 F.3d 169, 180 (3d Cir. 2015)). As a result, interpreting the citizen-speech prong to restrict internal reports of wrongdoing would "unduly restrict First Amendment rights." *Id.* (quoting *Flora*, 776 F.3d at 180).

– 14 –

The Third Circuit and the Supreme Court have found that any number of internal reports or complaints are protected speech, including:

- An employee's report to her direct supervisor that a department head made unwelcome sexual advances. *Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997).

- An assistant district attorney's question to his co-workers about whether they ever felt pressured to assist political campaigns. *Connick v. Myers*, 461 U.S. 138, 149 (1983).

- A teacher's demands to her principal regarding the school board's policies and practices. *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 413 (1979).

- A police officer telling a county prosecutor that he disagreed with the prosecutor's proposed office reorganization and promotion plan. *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir. 1988) (emphasis added).

- An employee's letter to his department head criticizing the management of his department. *Monsanto v. Quinn,* 674 F.2d 990, 996–97 (3d Cir.1982).

- An employee's report to her supervisor about her concerns that workplace meetings were being illegally recorded. *Javitz*, 940 F.3d at 865.

Plaintiff spoke as citizens by reporting Willoughby's malfeasance. He tampered with evidence, stole cash held in evidence, and retaliated against Plaintiffs for reporting that malfeasance. These acts are wrongful malfeasance or misfeasance. Tampering with evidence is a crime. 18 PA. CONS. STAT. § 4910. Stealing cash held in evidence is a crime. 18 PA. CONS. STAT. § 3921 (a). Instructing employees to lie and fabricate evidence is criminal as an attempt to tamper with evidence in violation of 18 PA. CONS. STAT.§ 4910. Even setting aside these and possibly other crimes, Willoughby's course of conduct was misfeasance or malfeasance. The First Amendment and Pennsylvania law prohibit retaliation against employees who report wrongdoing.

Plaintiffs' subsequent statements regarding retaliation against them for reporting Willoughby's initial misconduct is also speech as a citizen for similar reasons. Retaliation is misfeasance or malfeasance.

### B.      Plaintiffs have a valid due-process claim, although we agree that the only remedy is a name-clearing hearing.

After careful review, we have chosen not to seek damages for any due-process violation, although we believe that Third Circuit precedent leaves open that possibility. We ask this Court to permit Plaintiffs leave to amend their Complaint to explicitly seek a name-clearing hearing. We will leave a formal motion for once the various pending Rule 12(b)(6) motions are resolved.

On that claim's merits, the Township raises two arguments, both of which are flawed. Plaintiffs' pleading adequately sets forth the "stigma" necessary to show a due-process violation. The demotion of a union employee is also sufficient to establish the necessary "plus."

### i.      The Township's "no stigma" argument ignores the totality of Plaintiffs' pleading.

The Township for no apparent reasons believes that the only basis for our "stigma plus" claim is the false report to CID that Plaintiffs supposedly broke into Willoughby's office. We have no idea why the Township ignores the rest of our extremely detailed pleading. Plaintiffs were subject to too many actions to count that harmed their reputation. Listing the actions chronologically, including only the actions pled:

- Willoughby tampered with evidence to falsely implicate Plaintiffs in an alleged monetary theft. (Doc. 17: Amend. Compl. ¶¶ 22–27, 34–46).

- Willoughby tampered with the cash that Plaintiffs seized in on of their cases, creating the impression that Plaintiffs engaged in wrongdoing. (*Id.* at ¶¶ 70–75).

- Willoughby altered the records of Plaintiffs cases to try to show that their job performance was poor and accused them of lying. (*Id.* at ¶¶ 80–85).

- Willoughby failed to turn over a seized gun in one of Plaintiffs' cases or acted to prevent other employees from providing courts with their evidence, suggesting that they acted negligently or intentionally wrongful in prosecuting their cases. (*Id.* at ¶¶ 98, 105, 109).

- Willoughby disclosed the identity of Plaintiffs' confidential informant, impairing their reputation for trustworthiness. (*Id.* at ¶¶ 128–136).

- Police department employees falsely claimed that Plaintiffs broke into Willoughby's office. (*Id*. at 181–185).

- Willoughby sought to deny Plaintiffs' opportunity to work at the August 2020 protest unlike every other officer in the department, suggesting that they were not capable of doing so. (*Id.* at ¶¶ 190–197).

- The Township disbanded Plaintiffs' unit and demoted them, implying their performance was unacceptable. (*Id.* at ¶¶ 200–216).

- Ryan sought to claim that Plaintiffs engaged in improprieties in reporting their cases, implying to other employees that they acted wrongfully. (*Id.* at ¶¶ 217–222).

- Willert lied to the Township's Board of Supervisors about Plaintiffs' efforts to address their concerns. (*Id.* at ¶¶ 226–27).

These allegations are more than enough. Plaintiffs need allege only the "creative and dissemination of a false and defamatory impression." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). What more the Township thinks is necessary it fails to explain. Instead, it simply ignores most of Plaintiffs' allegations.

### ii.     The Township's "plus" argument ignores the facts.

Once again, the Township must create a strawman to advance its arguments. It claims again that the Township never demoted Plaintiffs. But we alleged that (Doc. 37: Amend. Compl. ¶ 215) ("HAMILL demoted both SCANLAN and BRYDGES to the rank of patrolmen."). The Township cannot delete our allegations. The *Twombly* standard requires the Township to accept our factual allegations as pled. It can raise its disagreement with them later.

Under the facts Plaintiffs actually pled, the demotion alone is sufficient to make out the necessary "plus." A "plus" is an "alteration or extinguishment of a right or status previously recognized by state law." *Paul v. Davis*, 424 U.S. 693, 711 (1976). In cases *not* involving union employees, the Third Circuit has found that a loss of a job may be necessary. *Hill v. Borough of Kutztown*, 455 F.3d 225, 238 (3d Cir. 2006).

But Plaintiffs are *union* police officers. The collective-bargaining agreement creates state-law rights and statuses. In Pennsylvania, members of police and fire unions have extraordinary rights in their employment under Act 111.[2] Police and fire unions cannot strike. 43 PURDON'S STAT. § 215.2 (partially repealed as to non-police and non-fire employees). In return, it gives profound bargaining rights to police and fire unions. *See* 43 PURDON'S .STAT. §§ 217.1–217.7.

As Plaintiffs alleged, the CBA and associated agreements between the Township and Plaintiffs' union prohibits demotions without process that the Township never gave Plaintiffs. (Doc. 17: Amend. Compl. at ¶¶ 262–265). A demotion without the requisite process is an "alteration" of a "right or status previously recognized by state law" within the meaning of *Paul v. Davis*. *See Smith v. Borough of Dunmore*, 633 F.3d 176, 180 (3d Cir. 2011) (finding that a suspension in violation of a CBA was a sufficient "plus"); *Dee v. Borough of Dunmore*, 549 F.3d 225, 234 (3d Cir. 2008) (finding that a CBA creates protected property interests the deprivation of which is sufficient to establish the necessary "plus").

### C.  Plaintiffs' allegations show the existence of a municipal custom sufficient to create *Monell* liability.

To establish a *Monell* claim, plaintiffs must establish both a constitutional violation and a municipal "policy" or "custom" that caused the violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). To establish the necessary municipal responsibility, the plaintiff must show that the municipality's higher-ups — its "policymakers" or "decisionmakers" — are somehow responsible for the policy or custom. *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (citing *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014)).

---

[2] Act of June 24, 1986, P.L. 237, No. 111, as amended. Again, we refer to the statute by citation to Purdon's Statute's informal codification.43

Here, Plaintiffs allege that a "custom" creates municipal liability. A custom is a "course of conduct, though not authorized by law, [that] was so permanent and well settled as to virtually constitute law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (internal quotation marks omitted).

There are a variety of ways to prove the existence of a custom. Here, Plaintiffs allege that the Township's policymakers "acquiesced" to the treatment of Plaintiffs — a valid path. *Id.* To establish acquiescence, the plaintiff must show that the decisionmaker knew or should have known what was going on, either actually or constructively. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir.1996) and *Silva v. Worden*, 130 F.3d 26, 31 (1st Cir. 1997)).

Here, Plaintiffs' pleading details a multi-year course of retaliation against Plaintiffs for reporting Willoughby's evidence tampering. That course of conduct involved not only Willoughby but also official action of the Township, including Plaintiffs' demotion. The President of Willoughby's Board of Commissioners — its highest ranking officer — knew about it. The existence of the course of conduct reached the highest levels of the Township. Yet the Township failed to stop it.

These allegations are more than sufficient to impose *Monell* liability against the Township. In assessing that question, this Court should first determine who the Township's "policymakers" are. *E.g. Santiago v. Warminster Township*, 629 F.3d 121, 135 & n.11 (3d Cir. 2010). In doing so, the Third Circuit looks to state law to determine who has "final policy making authority." *Id.* at n.11. That inquiry looks to the relevant Township Code. *Id.*

– 19 –

Here, the Township is a first-class township. Under the First Class Township Code,[3] the "board of commissioners" is responsible for supervising the police. 53 PURDON'S STAT. §§ 56401, 56405. As a result, as to police action, the Township's Board of Commissioners and its members are the relevant policymakers. *See also Santiago v. Warminster Township*, 629 F. 3d 121, 135 n.11 (3d Cir. 2010) (making a similar conclusion based on the Second Class Township Code's similar language).

We do not believe that the Third Circuit has yet settled whether an individual commissioner is a policymaker under the First Class Township Code, or whether it is instead the entire board as a whole. *Santiago* does not address that question even as to second-class townships.

This Court should find that Defendant Robert J. Willert alone is a policymaker. Willert is not just a member of the Board of Commissioners. He is its President. The First Class Township Code gives him unreviewable authority to act in a variety of respects. *E.g.* 53 PURDON'S STAT. §§ 56401.1; 55701(b); 55803-A(4); 56708; 57503-A. His actions alone are attributable to the Township. The Township cites no legal authority whatsoever to support its contrary assertion that Willert is supposedly not a policymaker.

Because Willert alone is a policymaker, Plaintiffs have established a municipal "custom" sufficient to support liability. Their pleading shows that Willert *actually knew* what was going on. Plaintiffs *repeatedly told him about it.* (Doc. 17: Amend. Compl. ¶¶ 19, 31, 48, 55, 82, 86, 161. They also asked others to discuss their concerns with him, or alleged that others in fact did so. (*Id.* at ¶¶ 67, 179). Yet the Township did not stop the unlawful retaliatory conduct against Plaintiffs. Instead, Willert even participated in the actions that led to Plaintiffs' retaliatory demotion. (*Id.* at ¶¶ 224, 226).

---

[3] Act of June 24, 1931, P.L. 1206, No. 331, as amended. We refer to the statute by its informal consolidation in Purdon's Statutes.

That is enough to establish a *Monell* claim. Were a course of conduct involving even a single police officer is sufficiently pervasive, a policymaker is charged with constructive knowledge of it. *See, e.g.*, *Beck v. City of Pittsburgh*, 89 F.3d 966, 973–74 (3d Cir. 1996) (finding municipal liability based on a number of complaints against the same officer). Similarly, where a policymaker is aware of longstanding problems in a particular area, the Third Circuit has found a "custom" sufficient to impose liability. *See, e.g.*, *Bielevicz v. Dubinon*, 915 F.2d 845, 852 (3d Cir. 1990) (finding that Pittsburgh officers' knowledge that they could use public-intoxication arrests as a pretext and widespread use of them was sufficient to establish a "custom").

Further, even if Willert alone is not a policymaker, Plaintiffs have still stated a *Monell* claim. The pervasive nature of the retaliatory conduct against Plaintiffs supports the inference that the full Board of Commissioners was actually or constructively knowledgeable about what was going on. Even if the Board lacked actual knowledge, the facts support a reasonable inference of constructive knowledge.

Plaintiffs have not yet had the benefit of discovery. They should not be kicked out of court before they can get the discovery necessary to establish actual or constructive notice.

Were it otherwise, plaintiffs would almost always struggle to get past the pleadings on a *Monell* claim against small municipalities in Pennsylvania. Unlike in for instance Philadelphia, smaller governments' policymakers tend to constitute boards instead of single people. If not even actual knowledge of a board's President of a pervasive, multi-year course of conduct is enough, plaintiffs would struggle to ever show that the entire board somehow knew or should have known about it without the benefit of discovery. The Third Circuit has not applied such a harsh standard — nor should this Court.

**IV.      This Court should grant leave to amend to the extent that it finds any defects in Plaintiffs' pleading.**

To the extent that this Court agrees with any of the Township's arguments, it should grant Plaintiffs leave to amend their Complaint. The Third Circuit has squarely explained: "[I]n civil rights cases district courts must offer amendment — irrespective of whether it is requested — when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Even as to Plaintiffs' non-civil-rights claims, this Court should grant leave to amend "freely . . . when justice so requires." FED. R. CIV. P. 15(a)(2).

Here, many of the Township's complaints are technical, faulting Plaintiffs for supposed bare-bones pleading despite a . We could add additional details to address any concerns that this Court might have with Plaintiffs' pleading.

**V.      The Township apparently mistakenly asserted a statute-of-limitations defense only in its Conclusion without any further development of that argument.**

The Township's Conclusion asserts that some of Plaintiffs' claims are supposedly time barred. But it never mentions that argument before then. We do not respond to any such argument because the Township failed to explain it at all. We believe that the Township erroneously included that assertion.

## CONCLUSION

Plaintiffs ask this Court to deny the Township's 12(b)(6) motion. We will further seek leave to amend to explicitly add a request for a name-clearing hearing, but to remove a claim for damages for the due-process violation.

Respectfully submitted,

_____/s/ Daniel J. Auerbach_____
Robert Gamburg, Esq. (Pa. I.D. No. 68808)
Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
robert@gamburglaw.com
dan@gamburglaw.com

*Co-Counsel for Plaintiffs*

_____/s/ Andres Jalon_____
Andres Jalon, Esq. (Pa. I.D. No. 83685)
JALON & ASSOCIATES
17 W. Airy Street
Norristown, Pennsylvania 19401
ajalon@jalonesq.com

*Counsel for Plaintiffs*

Dated: April 27, 2021

## CERTIFICATE OF SERVICE

This document has been filed electronically and is available for viewing and downloading from the ECF system. All parties have been served through ECF as all parties are represented by counsel who have consented to electronic service.

*/s/ Daniel J. Auerbach*

Robert Gamburg, Esq. (Pa. I.D. No. 68808)
Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
robert@gamburglaw.com
dan@gamburglaw.com

*Co-Counsel for Plaintiffs*

Dated: April 27, 2021