**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Sean Brydges and Gerard Scanlan<br><br>vs.<br><br>Ridley Township, *et al.* | Civil Action<br><br>No. 2:21-cv-00492 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT**
**SCOTT WILLOUGHBY'S MOTION TO STRIKE**

There was no reason for Defendant Scott Willoughby to file a motion to strike portions of our response brief. His counsel could have contacted us to try to work it out. They didn't. Instead, he files a motion to strike so that he can inject his desired facts into the discussion before they are relevant. For whatever reason, he believes it of great importance to tell this Court now that Ridley Township's own lawyer cleared the Township of wrongdoing and about his problems with Plaintiffs supposed conduct. Willoughby does so through a legal filing instead of sworn testimony — with its attendant right to remain silent under the Fifth Amendment. This Court should not entertain the legally irrelevant distraction that is the motion to strike.

The only question at issue here is whether this Court should strike a few words of Plaintiffs' response brief under FED. R. CIV. P. 12(f). That request is procedurally frivolous. Rule 12(f) permits courts to strike averments from a ***pleading.*** Our response brief opposing Ridley Township's Rule 12(b)(6) motion is not a pleading. *See* FED. R. CIV. P. 7(a) (listing all allowable pleadings). Rule 12(f) provides no authority to strike any portion of our brief. Willoughby's brief does not even try to explain why Rule 12(f) applies to our brief. He just skips over the issue.

Moreover, even if we pretended that a response brief is a pleading, Rule 12(f) still would not justify relief. To claim otherwise, Willoughby's filing distorts the allegations of Plaintiffs' pleading and the words of our brief.

Plaintiffs' pleading amply supports a reasonable inference that Willoughby's statements represented a threat of possible violence or perhaps even death. Plaintiffs pled:

> 152. WILLOUGHBY stated to him that he was going to post a picture of BRYDGES in the newspaper so he could no longer work undercover in the county.
>
> 153. WILLOUGHBY told him, "he was going to get the pictures of PLAINTIFFS from Facebook and hand them out to his "niggers."
>
> 154. WILLOUGHBY said he wanted his "niggers" from Chester to get the PLAINTIFFS. . . .
>
> 156. PLAINTIFFS believe that WILLOUGHBY was discussing physical assaults by the "Chester guys" against them. . . .
>
> 158. HAMILL asserted that he told PISANI about WILLOUGHBY's threats.
>
> 159. BRYDGES believed that WILLOUGHBY would follow through with his threats and he was worried about the safety of his wife and children.
>
> 160. On or about May 12, 2018, BRYDGES purchased security cameras for his house after learning of WILLOUGHBY'S threats against him and SCANLAN.

In short, Willoughby's words are reasonably interpreted as threatening that he would contact criminal acquaintances, give them pictures of Plaintiffs, and request that they "get" Plaintiffs. The point is not that he ever actually did that. The point is that it was a threat.

That threat could reasonably be construed as a threat to "**perhaps** even kill [the Plaintiffs]." In arguing otherwise, Willoughby apparently asks this Court to believe that someone would threaten to distribute pictures of undercover narcotics-enforcement officers who work with the DEA and on special task forces to criminals so that they could have a friendly chat. Instead, during violent assaults against police officers, especially those in narcotics enforcements, there is certainly a risk that the assailant could kill the officer — whether intentionally or because things escalated too far.

– 3 –

And Plaintiffs understood things that way, taking seriously the threat to themselves and to their families.

Contrary to Willoughby's argument, we never claimed that Willoughby *actually* engaged in an attempt to commit homicide. He made a threat. Reasonable people could and would understand that threat as we described it.

Even if Rule 12(f) applied — which of course it doesn't — it would not justify striking any portion of our pleading. The allegation about Willoughby's threat is relevant and important to our cause of action. It shows the nature of the retaliation and hostile workplace that supports our First Amendment and Whistleblower Law claims. The only reason we discussed it was to show the sufficiency of our allegations over the Township's objection that there was somehow no adverse employment action.

Willoughby did something gravely wrong. The fact that it looks bad for Willoughby is not a ground to strike it.

Willoughby's filing also contorts our words. It states: "When discussing possible homicide on page 14 of 29 of Docket Entry 27, Plaintiffs admit, 'this fact was not included in Plaintiffs' pleading – but could of course be added by amendment.' " As discussed, we never "discuss[ed] possible homicide" but rather how a reasonable person could construe Willoughby's threat.

Moreover, the language about "this fact was not included in Plaintiffs' pleading" had **nothing whatsoever** to do with the threat. Instead, it referred to the words that followed, which Willoughby fails to quote. The fact that we did not plead was Plaintiffs' medical diagnoses resulting from the

abuse that they suffered. The paragraph at issue made that clear beyond peradventure.[1]

Lastly, we note that Willoughby's requested relief is nonsensical. He seeks to strike entire paragraphs of our brief. Yet the only disagreement he has with our brief is a few words — the reference to "or perhaps even kill them" on page 4 and "or maybe even killed" on page 9. If this Court granted Willoughby's motion to strike, it should limit relief to just these phrases.

Respectfully submitted,

    */s/ Daniel J. Auerbach*
Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
dan@gamburglaw.com

*Co-Counsel for Plaintiffs*

Dated: April 30, 2021

---

[1] The entire paragraph reads: "Were all the other wrongs not enough, Plaintiffs' direct supervisor ***threatened to have them assaulted*** or maybe even killed. Further, while this fact was not included in Plaintiffs' pleading — but could of course be added by amendment — they have been diagnosed with medical conditions resulting from their mistreatment and are now seeking the equivalent of workers' compensation for those injuries. While the Township might challenge Plaintiffs' position later, their pleading amply sets forth the necessary allegations to show a hostile workplace."

As a matter of basic grammar, the "fact [that] was not included in Plaintiffs' pleading" was that Plaintiffs "have been diagnosed with medical conditions resulting from their mistreatment and are now seeking the equivalent of workers' compensation for those injuries" — not the threat.

## CERTIFICATE OF SERVICE

This document has been filed electronically and is available for viewing and downloading from the ECF system. All parties have been served through ECF as all parties are represented by counsel who have consented to electronic service.

                          */s/ Daniel J. Auerbach*
Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
dan@gamburglaw.com

*Co-Counsel for Plaintiffs*

Dated: April 30, 2021

– 1 –