IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Sean Brydges and Gerard Scanlan

vs.

Ridley Township, *et al.*

Civil Action

No. 2:21-cv-00492

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT JOSEPH
A. RYAN'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   Plaintiffs state a valid First Amendment claim on the merits. . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Ryan's reliance on *Barnes v. Brown* lacks merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   As we already argued, the First Amendment protects reports of
          wrongdoing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  Plaintiffs have a valid due-process claim, although we agree that the only remedy
     is a name-clearing hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. Plaintiffs consent to dismissal of their IIED, defamation, and false-light claims
     against all Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.  Plaintiffs sate a valid civil-conspiracy claim against Ryan . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.   This Court should grant leave to amend to the extent that it finds any defects in
     Plaintiffs' pleading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

**Cases**

*Azzaro v. County of Allegheny*,
   10 F.3d 968 (3d Cir. 1997) ................................................................. 10

*Baloga v. Pittston Area Sch. Dist.*,
   927 F.3d 742 (3d Cir. 2019) ................................................................. 8

*Commonwealth v. Musser Forests, Inc.*,
   146 A.2d 714 (Pa. 1958)...................................................................... 12

*Connick v. Myers*,
   461 U.S. 138 (1983)............................................................................ 10

*De Ritis v. McGarrigle*,
   861 F.3d 444 (3d Cir. 2017) ................................................................. 8

*Dougherty v. Sch. Dist. of Phila.*,
   772 F.3d 979 (3d Cir. 2014) ................................................................. 7

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
   482 F.3d 247 (3d Cir. 2007) ............................................................... 13

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006).............................................................................. 8

*Givhan v. Western Line Consol. Sch. Dist.*,
   439 U.S. 410 (1979)............................................................................ 10

*Javitz v. County of Luzerne*,
   940 F.3d 858 (3d Cir. 2019) ..................................................... 7–9, 10

*Jerri v. Harran*,
   625 F. App'x 574 (3d Cir. 2015) (non-precedential)........................... 7

*Monsanto v. Quinn,*
   674 F.2d 990 (3d Cir.1982)................................................................. 10

*Palardy v. Township of Millburn*,
   906 F.3d 76 (3d Cir. 2018) ................................................................... 8

*Pickering v. Bd. of Educ.*,
   391 U.S. 563, 568 (1968)..................................................................... 8

*Zamboni v. Stamler*,
  847 F.2d 73 (3d Cir. 1988) ................................................................. 10

**Statutes**

18 P<small>A</small>. C<small>ONS</small>. S<small>TAT</small>. § 3921 ................................................................... 10

18 P<small>A</small>. C<small>ONS</small>. S<small>TAT</small>. § 4910 ................................................................... 10

18 P<small>A</small>. C<small>ONS</small>. S<small>TAT</small>.§ 4910 ................................................................... 10

**Rules**

F<small>ED</small>. R. C<small>IV</small>. P. 15 ........................................................................ 13

## INTRODUCTION

We do not oppose Defendant Joseph A. Ryan's motion to dismiss on two of the asserted grounds. We contest his position as to the First Amendment and as to civil conspiracy. On the First Amendment, his argument fails for the same reasons that the Township's similar argument does. The First Amendment protects government employees when they report misconduct. The law does not allow the Township or its employees to punish police officers for doing the right thing and reporting a fellow officer's misconduct.

On civil conspiracy, Pisani ignores the inherent nature of a conspiracy claim. It is a rare conspiracy case where the plaintiff has direct proof of conspiracy. Instead, conspiracy claims necessarily rely on circumstantial evidence. Plaintiffs amply pleaded the evidence that Pennsylvania courts demand for a circumstantial inference of a shared, unlawful purpose.

## FACTUAL BACKGROUND

Plaintiffs Sean Brydges and Gerard Scanlan are Ridley Township police officers. Together, they constituted the Township's Anti-Crime Unit, a special investigative unit. Plaintiffs made numerous narcotics arrests, often seizing drugs and cash. The Township's procedures took special care to ensure accurate records and custody of cash. (Doc. 17: Amend. Compl. at ¶¶ 9–12, 34–38).

They learned that their direct supervisor, Captain Scott Willoughby, was tampering with evidence. The Criminal Investigation Division was investigating cash and other property missing from evidence. It turned out that Willoughby was responsible. During the investigation, he asked Plaintiffs to help him conceal his theft of cash from evidence. Willoughby sought to conceal the theft by replacing the stolen funds with separate money obtained from who knows where. He asked Plaintiffs to re-package evidence even though that would break the chain of custody. They would not do so. (*Id.* at ¶¶ 20–26, 40–46).

Plaintiffs reported Willoughby's conduct to the Township's Manager Edmond Pisani. Pisani told them that he would report the incident to the township's Police Commissioner, Robert J. Willert. Willert is also the President of the Township's Board of Commissioners. (*Id.* at ¶¶ 14, 47). The Board is the Township's executive decisionmaker.

Plaintiffs met with both Pisani and Willert. Plaintiffs were worried that Willoughby would retaliate against them. Pisani and Willert reassured Plaintiffs that they would not make Willoughby aware of the report. (*Id.* at 48–50).

Instead, Pisani told Willoughby about the report. Within two days, Willoughby was irate when he spoke with Plaintiffs. He took away their access to take-home vehicles, a decision Willert would later reverse. (*Id.* at 51–57).

In February 2016, Plaintiffs learned of additional misconduct. They participated in a nuisance-bar raid. It appeared to Plaintiffs that someone had tipped off the bar. At the same time, Willert was acting strangely and avoiding interacting with the nuisance-bar detail. Plaintiffs discussed the matter with Manager Pisani. Pisani discovered that Willoughby had called the bar before the raid. Again, Plaintiffs did the right thing. They asked Pisani to report the information to Commissioner Willert or to investigate. Plaintiffs do not believe that Pisani did anything. (*Id.* at 58–69).

In May 2016, Plaintiffs again learned of more misconduct. They learned that Willoughby again stole cash from evidence in one of their cases. This time, Willoughby acted to falsely implicate Plaintiffs. He asked another police officer to write and backdate a report. He did so. That report falsely blamed the discrepancy on Plaintiffs' supposed miscounting of the cash in the first place. (*Id.* at ¶¶ 70–79).

Willoughby continued to attack Plaintiffs' reliability. He falsely accused them of exaggerating their arrest records and so exaggerating their effectiveness and success. (*Id.* at ¶¶ 80–86).

To try to make his false narrative real, Willoughby began to interfere with Plaintiffs' ability to prosecute cases. In June 2016, Plaintiffs learned that Willoughby took criminal evidence from one of their cases. Plaintiffs learned that Willoughby ordered other police officers not to return the missing evidence. The only apparent purpose of this act would be to threaten the viability of the prosecution. Willoughby also ordered officers not to help Plaintiffs by, for instance, transporting evidence to court or to forensic labs or documenting the chain of custody. (*Id.* at ¶¶ 87–104).

Willoughby's pattern of misconduct continued. He tried to abuse his position. He asked Plaintiffs to lie to a district attorney by falsely claiming that his friend's employee was a cooperator. Willoughby wanted to help out the friend's employee as payment in kind for home-improvement services that his friend had provided to him. Plaintiffs refused. (*Id.* at ¶¶ 115–120).

Similarly, Willoughby asked Plaintiffs to lie again to help get his daughter's boyfriend out of marijuana possession charges. Again, Plaintiffs refused. They did the right thing again. They reported this misconduct to superiors. (*Id.* at 121–27).

After that, Willoughby's retaliation got more serious. Plaintiffs had a reliable and effective confidential informant. Willoughby knew that. He disclosed the informant's identity to a defense-attorney friend of his. (*Id.* at ¶¶ 128–136). The revelation of a confidential informant's identity, of course, threatens that informant's work and safety. It also threatens Plaintiffs' reputation for trustworthiness when they deal with other potential informants. Nobody would want to be so outed. Nobody could trust a police officer who would allow that to happen.

Willoughby also acted to prevent Plaintiffs from working overtime. In doing so, he told other police officers that he intended to "get" Plaintiffs — meaning to retaliate against them. (*Id.* at ¶¶ 137–149).

Even worse, Willoughby threatened to endanger Plaintiffs. Plaintiff Brydges worked undercover. Willoughby threatened to post his picture to the public to reveal his identity. He also

– 3 –

threatened to have people he knew from Chester to attack the Plaintiffs, or perhaps even kill them. (Id. at ¶¶ 150–158).

Plaintiffs became deeply concerned. They did not believe that Willoughby was making idle threats. Instead, they had concerns about their safety and the safety of their families. For instance, Plaintiff Brydges purchased security cameras for his house. (Id. at ¶¶ 159–160).

Plaintiffs took steps to address their concerns. They again spoke to Manager Pisani and Commission Willert. Pisani and Willert acknowledged that Willoughby had admitted to making the threats. Plaintiffs explained that they could not work under Willoughby given his abuse and threats. (*Id*. at ¶¶ 161–165).

Pisani and Willert claimed that they would address the situation. Instead, Willert and Pisani told other police officers that Plaintiffs' claims were baseless. (*Id.* at ¶ 166).

Willoughby continued to retaliate against Plaintiffs. In July 2019, he tried to prevent them from receiving overtime pay, although that decision was later reversed after Plaintiffs filed a grievance and spoke with Manager Pisani. Pisani also reassured Plaintiffs that he would talk to Commissioner Willert to help end Willoughby's retaliation. (*Id.* at ¶¶ 167–80).

The retaliation did not end. Willoughby claimed that someone burglarized his office. He falsely implicated Plaintiffs. (*Id.* at181–189). Willoughby also took yet more steps to deny Plaintiffs' overtime by preventing them from serving during an August 2020 protest. (*Id.* at ¶¶ 190–199).

The pattern of retaliation culminated in December 2020. Plaintiffs learned of an on-going federal criminal investigation of Township officials. Commissioner Willert believed that Plaintiffs were responsible for the investigation by providing the information that led to the federal investigation. (*Id.* at ¶¶ 200–202).

Willert decided to personally participate in the retaliation. He advanced a purported reorganization of the Police Department. Under that plan, the Department disbanded Plaintiffs' Anti-

Crime Unit. Plaintiffs were transferred to a patrol division and demoted to the rank of Patrolman. Even though the agreements between Ridley Township and the police union requires demotion only for "just cause," Plaintiffs received no process prior to demotion. (*Id.* at ¶¶ 203–215, 262).

During all of this time, Commissioner Willert was aware of everything that was happening to Plaintiffs. Yet he did nothing to stop the abuse. While he acted on the margins, such as by restoring their use of "take home" vehicles and addressing some of the overtime issues, he did not meaningfully act. Instead, he furthered the retaliation against Plaintiffs through the purported restructuring of the Police Department.

**ARGUMENT**

**I.     Plaintiffs state a valid First Amendment claim on the merits.**

Much like the Township, Ryan challenges our First Amendment retaliation claim, contesting whether Plaintiffs spoke as citizens. We already explained why this argument was not correct in response to the Township's motion. He cites one new case, which we address first. Then, for completeness and to ensure that we do not waive any arguments, we reiterate essentially verbatim our analysis from our brief responding to the Township's motion.

**A.     Ryan's reliance on *Barnes v. Brown* lacks merit.**

Pisani claims that the unreported district-court decision in *Barnes v. Brown*, No. 16-214, 2016 WL 5376023 (E.D. Pa. Sept. 26, 2016) supports rejecting Plaintiffs' claim. Ryan is not correct because he misconstrues the decision.

On First Amendment retaliation, the essential question is when a public employee's speech relating to his job is protected speech and when it is not. As we outlined in our brief in response to the Township's arguments, the question is whether the employee's speech is part of his job duties or

not. Speech beyond the employee's job duties is protected. If reporting concerns is part of an employee's job duties, it is not protected speech. It is protected speech otherwise.

Both *Barnes* and Ryan agree with that analysis. Where we split ways is with Ryan's application of *Barnes.*

In *Barnes*, the district court found that speech was not protected because it was a necessary part of the employee's job duties. The plaintiff was a county HR director. She was responsible for ensuring that immigrant employees had federal authorization to work. She sought legal advice from the county solicitor's office because she suspected that the county waited too long to get the necessary documentation. She then looked through employees files to substantiate her concerns, dealt with more county lawyers, proposed revisions to the process, refused to allow certain employees to work until they provided the documentation, and had discussions with her staff about the issue. The HR director then attended a county cabinet meeting, and raised her concerns there.

The district court found that the HR director's speech was not protected only because part of her job was to raise concerns about the county's performance of HR obligations. As the "organizational head of the department," her concerns about immigration paperwork were her responsibility.

Ryan quotes certain language from *Barnes* out of context, suggesting a categorical rule that any complaint to a supervisor is not protected speech. But that is not true, as Third Circuit decisions decided *after* Barnes shows. As we outlined in our brief in response to Pisani's Rule 12(b)(6) motion, the Third Circuit addressed that question in *Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007), and post-*Barnes* decisions distinguishing it.

In *Foraker*, much like in *Barnes*, the Third Circuit found that reporting an issue about the employee's job duties was not protected speech. The plaintiffs were shooting-range instructors who reported inadequate environmental protections at the shooting range. They were then ordered to give a statement to an auditor. The Third Circuit found that this speech was not protected because their

job duties required them to make the report and to comply with the order to give a statement to the auditor.

In other cases, the Third Circuit distinguished *Foraker*, finding that various complaints to supervisors that *were not* part of the employee's job duties. The mere fact that an employee makes reports to superiors does not mean that he loses the protections of the First Amendment. *See Flora v. County of Luzerne*, 776 F.3d 169 (3d Cir. 2015) (finding that the Chief Public Defender's complaints about inadequate funding, equipment, and staff and about fallout from the "Kids for Cash" scandal were protected speech because they were not part of his job duties); *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014) (finding that the Deputy Chief Business Officer of the School District spoke as a citizen when he disclosed that the district improperly steered a contract to an ineligible contractor); *Jerri v. Harran*, 625 F. App'x 574, 580 (3d Cir. 2015) (non-precedential) (finding that a chief of a fire company's complaints to reporters and law enforcement about the wisdom of purchasing a "fire boat" was speech as a citizen).

*Barnes* also did not consider another legal doctrine that applies here. The First Amendment protects employee reports of malfeasance regardless of whether made to a superior. Here, Plaintiffs reported Willoughby's criminal and wrongful misconduct. The First Amendment protects that speech. *Javitz v. County of Luzerne*, 940 F.3d 858, 864 (3d Cir. 2019). We discuss that issue in detail in the next section.

> **B.     As we already argued, the First Amendment protects reports of wrongdoing.**

A First Amendment retaliation claim requires a plaintiff to prove that: "(1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area*

*Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Palardy v. Township of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018)) (internal quotation marks omitted).

Ryan challenges only the first element, whether Plaintiffs "engaged in constitutionally protected conduct." Because Plaintiffs are public employees, special requirements apply to that element of a retaliation claim.

While public employees do not "surrender" their First Amendment rights merely because they work for the government, *id.* at 753 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)), public employers have some room to regulate employee speech. In assessing whether an employer acted lawfully, courts balance "the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)) (cleaned up).

A three-prong test applies to assessing this balance. The Third Circuit asks: "(1) whether the employee spoke as a citizen; (2) whether the statement involved a matter of public concern; and (3) whether the government employer nevertheless had 'an adequate justification for treating the employee differently from any other member of the general public' based on its needs as an employer. *Id.* (quoting *Palardy*, 906 F.3d at 81). These prongs are all necessary elements of a claim. *See id.* at 753–59.

Ryan misunderstands the law. Under the "spoke as a citizen" element, the First Amendment does not protect employee speech "pursuant to their job duties." *De Ritis v. McGarrigle*, 861 F.3d 444, 453 (3d Cir. 2017) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Ryan in contrast believes that what controls is whether Plaintiffs' speech was about their job. But whether an employee spoke "within the office" is not controlling. *Id.* Employees can receive protection for "expressions made at work." *Garcetti*, 547 U.S. at 420.

To distinguish whether an expression made at work is "within the scope of the employee's duties, courts must make a "practical inquiry." *Garcetti*, 547 U.S. at 424. There are not hard-and-fast rules.

*De Ritis* illustrates how this Court should conduct that inquiry. There, a public defender was transferred to the juvenile-court unit. The defender believed that the transfer was punishment for failing to induce enough clients to plead guilty. The defender shared this "rumor" while physically present in court but prior to the commencement of on-record proceedings. The defender also met with the County Solicitor and the chairman of the County Council in private to complain.

The Third Circuit explained that the in-court statements were part of the defender's duties, but the complaints to the Solicitor and to the chairman were not. Part of the defender's job was to "build rapport" with courts and opposing counsel. Sharing a rumor in court, even off the record, affected those duties. Moreover, the off-the-record statements could have an effect on the proceedings in which the defender was involved. As a result, sharing "rumors" while in court was not "citizen" speech. In contrast, discussing those "rumors" outside of court *was* "citizen" speech even though made to the defender's superiors. The defender's complaints to superiors were not what he "was paid to perform on an ordinary basis."

Applying similar reasoning here, Plaintiffs' report of misconduct is speech as a citizen. The Township does not pay Plaintiffs to make complaints about the malfeasance of others. They are not the Inspectors General of Ridley Township. They are police officers. They reported Willoughby's misconduct and retaliation to superiors. That is much like the defender's complaints to superiors that the Third Circuit found to be citizen speech in *De Ritis*.

In addition, there is an entirely separate and distinct legal principle that makes clear that Plaintiffs' spoke as citizens. The First Amendment protects a public employee's report of "malfeasance or misfeasance." *Javitz v. County of Luzerne*, 940 F.3d 858, 864 (3d Cir. 2019). The

"speak as a citizen" element does not defeat internal reports of malfeasance or misfeasance. Reporting wrongdoing is not "within the realm" of an employee's "ordinary job duties." *Id.* (quoting *Flora v. County of Luzerne*, 776 F.3d 169, 180 (3d Cir. 2015)). As a result, interpreting the citizen-speech prong to restrict internal reports of wrongdoing would "unduly restrict First Amendment rights." *Id.* (quoting *Flora*, 776 F.3d at 180).

The Third Circuit and the Supreme Court have found that any number of internal reports or complaints are protected speech, including:

- An employee's report to her direct supervisor that a department head made unwelcome sexual advances. *Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997).

- An assistant district attorney's question to his co-workers about whether they ever felt pressured to assist political campaigns. *Connick v. Myers*, 461 U.S. 138, 149 (1983).

- A teacher's demands to her principal regarding the school board's policies and practices. *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 413 (1979).

- A police officer telling a county prosecutor that he disagreed with the prosecutor's proposed office reorganization and promotion plan. *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir. 1988) (emphasis added).

- An employee's letter to his department head criticizing the management of his department. *Monsanto v. Quinn,* 674 F.2d 990, 996–97 (3d Cir.1982).

- An employee's report to her supervisor about her concerns that workplace meetings were being illegally recorded. *Javitz*, 940 F.3d at 865.

Plaintiff spoke as citizens by reporting Willoughby's malfeasance. He tampered with evidence, stole cash held in evidence, and retaliated against Plaintiffs for reporting that malfeasance. These acts are wrongful malfeasance or misfeasance. Tampering with evidence is a crime. 18 PA. CONS. STAT. § 4910. Stealing cash held in evidence is a crime. 18 PA. CONS. STAT. § 3921 (a). Instructing employees to lie and fabricate evidence is criminal as an attempt to tamper with evidence in violation of 18 PA. CONS. STAT.§ 4910. Even setting aside these and possibly other crimes,

Willoughby's course of conduct was misfeasance or malfeasance. The First Amendment and Pennsylvania law prohibit retaliation against employees who report wrongdoing.

Plaintiffs' subsequent statements regarding retaliation against them for reporting Willoughby's initial misconduct is also speech as a citizen for similar reasons. Retaliation is misfeasance or malfeasance.

### II. Plaintiffs have a valid due-process claim, although we agree that the only remedy is a name-clearing hearing.

After careful review, we have chosen not to seek damages for any due-process violation, although we believe that Third Circuit precedent leaves open that possibility. We ask this Court to permit Plaintiffs leave to amend their Complaint to explicitly seek a name-clearing hearing. We will leave a formal motion for once the various pending Rule 12(b)(6) motions are resolved.

We need maintain that claim only against the Township — which failed to provide any process for a name-clearing hearing — and so agree that no due-process claim should proceed against Ryan.

### III. Plaintiffs consent to dismissal of their IIED, defamation, and false-light claims against all Defendants.

We agree that this Court should dismiss all of our state-law claims **except** under the Whistleblower Law and for conspiracy to violate the Whistleblower Law.

### IV. Plaintiffs sate a valid civil-conspiracy claim against Ryan.

Ryan challenges Plaintiffs' detailed pleading on the basis that it does not adequately explain how hes engaged in civil conspiracy. But Plaintiffs' allegations were more than enough to state a claim.

– 11 –

"To state a cause of action for civil conspiracy, a plaintiff must show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Skipworth ex rel. Williams v. Lead Indus. Ass'n*, 690 A.2d 169, 174 (Pa. 1997) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

Here, Willoughby engaged in a wrongful course of retaliation against Plaintiffs for his reporting of his misdeeds. Ryan was aware of that course of conduct. He actively furthered it, demoting Plaintiffs in retaliation against them for their reporting of Willoughby's misconduct. That is enough to show the unlawful purpose necessary to support a civil-conspiracy claim.

"It is well established, and sustained by abundant authority, that a conspiracy may be proven by circumstantial evidence . . . . The rule is, of course, not limited to criminal conspiracy; it is equally applicable to cases involving civil conspiracy. *Commonwealth v. Musser Forests, Inc.*, 146 A.2d 714, 716 (Pa. 1958) (internal citations omitted). There is no requirement of "direct and positive testimony of a collusive agreement to do something wrongful." *Id.* Instead, the "least degree of concert or collusion between parties" is enough. *Id.*

For instance, in *Musser Forests*, the existence of a shared desire to profit from a breach of contract was sufficient to establish a civil-conspiracy claim on the pleadings. The Commonwealth alleged that a company agreed to purchase at cost seedlings and trees from the Commonwealth to plant in Pennsylvania. The idea was to support tree planting for natural conservation. Instead, the corporation and the defendant officers or stockholders of that corporation planted the trees and then sold them for profit in breach of the contract. The defendants then falsely reported that they used the seedlings and trees appropriately. This scheme financially benefitted all of the defendants. That was enough to prove that the defendants acted with the "common purposed of defrauding the Commonwealth for their personal gain."

Here, despite demoting Plaintiffs, Ryan now incorrectly claims that it is impossible to draw a similar inference in this case. Yet he acted to accomplish the same retaliatory goal as the other conspirators. Under *Musser Forests* and the principals of civil-conspiracy law, that is enough to draw the necessary inference of a wrongful purpose.

### V.    This Court should grant leave to amend to the extent that it finds any defects in Plaintiffs' pleading.

To the extent that this Court agrees with any of Ryan's arguments besides those we do not oppose, it should grant Plaintiffs leave to amend their Complaint. The Third Circuit has squarely explained: "[I]n civil rights cases district courts must offer amendment — irrespective of whether it is requested — when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Even as to Plaintiffs' non-civil-rights claims, this Court should grant leave to amend "freely . . . when justice so requires." FED. R. CIV. P. 15(a)(2).

Here, Ryan's arguments about civil conspiracy are technical, faulting Plaintiffs for supposed bare-bones pleading . We could add additional details to address any concerns that this Court might have with Plaintiffs' pleading.

## CONCLUSION

Plaintiffs ask this Court to deny Ryan's 12(b)(6) motion, except as to the Due Process Clause and IIED claims. We will further seek leave to amend to explicitly add a request for a name-clearing hearing, but to remove a claim for damages for the due-process violation.

Respectfully submitted,

*/s/ Daniel J. Auerbach*
Robert Gamburg, Esq. (Pa. I.D. No. 68808)
Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
robert@gamburglaw.com
dan@gamburglaw.com

*Co-Counsel for Plaintiffs*

*/s/ Andres Jalon*
Andres Jalon, Esq. (Pa. I.D. No. 83685)
Jalon & Associates
17 W. Airy Street
Norristown, Pennsylvania 19401
ajalon@jalonesq.com

*Counsel for Plaintiffs*

Dated: May 17, 2021

## CERTIFICATE OF SERVICE

This document has been filed electronically and is available for viewing and downloading from the ECF system. All parties have been served through ECF as all parties are represented by counsel who have consented to electronic service.

                                                  */s/ Daniel J. Auerbach*
                                        Robert Gamburg, Esq. (Pa. I.D. No. 68808)
                                        Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
                                        Gamburg & Benedetto, LLC
                                        1500 John F. Kennedy Blvd., Suite 1203
                                        Philadelphia, PA 19102
                                        robert@gamburglaw.com
                                        dan@gamburglaw.com

                                        *Co-Counsel for Plaintiffs*

Dated: May 17, 2021