# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sean Brydges and Gerard Scanlan | Civil Action |
| vs. | No. 2:21-cv-00492 |
| Ridley Township, *et al.* | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SCOTT WILLOUGHBY'S TO DISMISS UNDER RULE 12(b)(6)

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION ..................................................................... 1

FACTUAL BACKGROUND .............................................................. 1

ARGUMENT ......................................................................... 5

I.    Willoughby improperly discusses extra-record facts ...................... 5

II.   Plaintiffs have a valid claim against Willoughby for their demotion ..... 6

III.  Plaintiffs stated a viable First Amendment claim against Willoughby ..... 8

      A.    We agree with Willoughby that this Court may consider only acts that
            occurred on or after February 2, 2019 in assessing the First Amendment
            retaliation claim ................................................ 8

      B.    Plaintiffs' speech was constitutionally protected ................ 9

      C.    Plaintiffs adequately alleged the causal connection between their protected
            speech and the retaliatory conduct necessary to state a claim ... 12

IV.   Plaintiffs have a valid due-process claim, although we agree that the only remedy
      is a name-clearing hearing....................................... 15

V.    Plaintiffs consent to dismissal of their IIED, defamation, and false-light claims
      against all Defendants............................................ 16

VI.   Plaintiffs state a Whistleblower Law claim ............................ 16

      A.    The claim is not time barred .................................. 16

      B.    Plaintiffs alleged a "good faith report" as the Whistleblower Law requires..... 17

VII.    Plaintiffs sate a valid civil-conspiracy claim against Willoughby . . . . . . . . . . . . . . . . . . . . . .  19

VIII.   Willoughby is not entitled to immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

        A.    Willoughby is not entitled to qualified immunity on the First Amendment
              claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

        B.    Willoughby is not entitled to state-law immunity . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

IX.     This Court should grant leave to amend to the extent that it finds any defects in
        Plaintiffs' pleading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

## TABLE OF AUTHORITIES

**Cases**

*Abuomar v. Pa. Dep't of Corr.*,
   No. 4:14-CV-1036, 2015 WL 2073783 (M.D. Pa. May 4, 2015)............................ 18

*Azzaro v. County of Allegheny*,
   10 F.3d 968 (3d Cir. 1997) ...................................................................... 10

*Baker v. Benton Area Sch. Dist.*,
   418 F. Supp. 3d 17 (M.D. Pa. 2019) ........................................................ 18

*Ben. Guar. Corp. v. White Consol. Industs.*,
   998 F.2d 1192 (3d Cir. 1993) ................................................................... 5

*Bielevicz v. Dubinon*,
   915 F.2d 845 (3d Cir.1990)....................................................................... 7

*Chavarriaga v. N.J. Dep't of Corr.*,
   806 F.3d 210 (3d Cir. 2015) ..................................................................... 7

*Collins v. Crago*,
   No. 1876 C.D. 2016, 2017 WL 4079024
   (Pa. Commw. Ct. Sept. 15, 2017) (unreported)............................................. 16

*Commonwealth v. Musser Forests, Inc.*,
   146 A.2d 714 (Pa. 1958)..................................................................... 19–20

*Connick v. Myers*,
   461 U.S. 138 (1983)....................................................................... 10, 22

*De Ritis v. McGarrigle*,
   861 F.3d 444 (3d Cir. 2017) .................................................................. 11

*Dooley v. Wetzel*,
   957 F.3d 366 (3d Cir. 2020) .................................................................... 7

*Dorsey v. Redman*, 96 A.3d 332, 341 (Pa. 2014) ........................................... 23

*Dougherty v. Sch. Dist. of Phila.*,
   772 F.3d 979 (3d Cir. 2014) .............................................................. 12, 21

*Egervary v. Young*,
   366 F.3d 238 (3d Cir. 2004) .................................................................... 7

*Falco v. Zimmer*,
   767 F. App'x 288 (3d Cir. 2019)............................................................... 10

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
  482 F.3d 247 (3d Cir. 2007) ........................................................... 25

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ........................................................ 5, 18

*Frazier v. City of Philadelphia*,
  441 F. Supp. 3d 76 (E.D. Pa. 2020) ................................................. 10

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ..................................................................... 21

*Givhan v. Western Line Consol. Sch. Dist.*,
  439 U.S. 410 (1979). ............................................................... 10, 22

*Hedges v. Musco*,
  204 F.3d 109 (3d Cir. 2000) ............................................................ 7

*Javitz v. County of Luzerne*,
  940 F.3d 858 (3d Cir. 2019) ...................................................... 10, 21

*Jerri v. Harran*,
  625 F. App'x 574 (3d Cir. 2015) (non-precedential).................................. 12, 21

*Krouse v. Am. Sterilizer Co.*,
  126 F.3d 494 (3d Cir.1997) ............................................................ 13

*Lahovski v. Rush Township*,
  441 F. Supp. 3d 43, 51 (M.D. Pa. 2020).............................................. 6

*Lane v. Franks*,
  573 U.S. 228 (2014) ..................................................................... 21

*Lauren W. ex rel. Jean W. v. DeFlaminis*,
  480 F.3d 259 (3d Cir. 2007) ........................................................... 13

*Mandel v. M & Q Packaging Corp.*,
  706 F.3d 157 (3d Cir. 2013) ........................................................... 17

*Miller v. Helm*,
  No. 4:17-CV-01590, 2017 WL 6405738 (E.D. Pa. Dec. 15, 2017)......................... 18

*Monsanto v. Quinn*,
  674 F.2d 990 (3d Cir.1982). ....................................................... 10, 22

*O'Connor v. City of Newark*,
  440 F.3d 125 (3d Cir. 2006) ......................................................... 8, 17

*Pickering v. Board of Educ.*,
  391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Roseberry v. City of Philadelphia*,
  716 F. App'x 89 (3d Cir. 2017) (non-precedential) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*See Vasil v. Dep't of Mil. & Veterans Affs.*,
  230 A.3d 529 (Pa. Commw. Ct. 2020) (Brobson, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Skipworth ex rel. Williams v. Lead Indus. Ass'n*,
  690 A.2d 169, 174 (Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Thompson Coal Co. v. Pike Coal Co.*,
  412 A.2d 466 (Pa. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Townes v. City of New York*,
  176 F.3d 138, (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zamboni v. Stamler*,
  847 F.2d 73 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

**Statutes**

Statutory Construction Act
  1 PA. CONS. STAT. § 1936 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tort Claims Act, 42 PA. CONS. STAT. § 8541, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  42 PA. CONS. STAT. § 8541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  42 PA. CONS. STAT. § 8542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  42 PA. CONS. STAT. § 8545 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  42 PA. CONS. STAT. § 8550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Whistleblower Law, 43 PURDON'S STAT. § 1421, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  43 PURDON'S STAT. § 1422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  43 PURDON'S STAT. § 1424 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Rules**

FED. R. CIV. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FED. R. CIV. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**INTRODUCTION**

We do not oppose Defendant Scott Willoughby's motion to dismiss on four of the asserted grounds. We contest his position as to the First Amendment, the Whistleblower Law, and as to civil conspiracy. On the First Amendment, his argument fails for the same reasons that the Township's similar argument does. The First Amendment protects government employees when they report misconduct. The law does not allow the Township or its employees to punish police officers for doing the right thing and reporting a fellow officer's misconduct.

On the Whistleblower Law, Willoughby misunderstands the nature of Plaintiffs' claim and the statute of limitations. He also seeks to substitute his version of the facts for what Plaintiffs pled, improperly contradicting this Court's standard of review and Whistleblower Law precedent.

As to civil conspiracy, Willoughby ignores the inherent nature of a conspiracy claim. It is a rare conspiracy case where the plaintiff has direct proof of conspiracy. Instead, conspiracy claims necessarily rely on circumstantial evidence. Plaintiffs amply pleaded the evidence that Pennsylvania courts demand for a circumstantial inference of a shared, unlawful purpose.

**FACTUAL BACKGROUND**

Plaintiffs Sean Brydges and Gerard Scanlan are Ridley Township police officers. Together, they constituted the Township's Anti-Crime Unit, a special investigative unit. Plaintiffs made numerous narcotics arrests, often seizing drugs and cash. The Township's procedures took special care to ensure accurate records and custody of cash. (Doc. 17: Amend. Compl. at ¶¶ 9–12, 34–38).

They learned that their direct supervisor, Captain Scott Willoughby, was tampering with evidence. The Criminal Investigation Division was investigating cash and other property missing from evidence. It turned out that Willoughby was responsible. During the investigation, he asked Plaintiffs to help him conceal his theft of cash from evidence. Willoughby sought to conceal the theft

by replacing the stolen funds with separate money obtained from who knows where. He asked Plaintiffs to re-package evidence even though that would break the chain of custody. They would not do so. (*Id.* at ¶¶ 20–26, 40–46).

Plaintiffs reported Willoughby's conduct to the Township's Manager Edmond Pisani. Pisani told them that he would report the incident to the township's Police Commissioner, Robert J. Willert. Willert is also the President of the Township's Board of Commissioners. (*Id.* at ¶¶ 14, 47). The Board is the Township's executive decisionmaker.

Plaintiffs met with both Pisani and Willert. Plaintiffs were worried that Willoughby would retaliate against them. Pisani and Willert reassured Plaintiffs that they would not make Willoughby aware of the report. (*Id.* at 48–50).

Instead, Pisani told Willoughby about the report. Within two days, Willoughby was irate when he spoke with Plaintiffs. He took away their access to take-home vehicles, a decision Willert would later reverse. (*Id.* at 51–57).

In February 2016, Plaintiffs learned of additional misconduct. They participated in a nuisance-bar raid. It appeared to Plaintiffs that someone had tipped off the bar. At the same time, Willert was acting strangely and avoiding interacting with the nuisance-bar detail. Plaintiffs discussed the matter with Manager Pisani. Pisani discovered that Willoughby had called the bar before the raid. Again, Plaintiffs did the right thing. They asked Pisani to report the information to Commissioner Willert or to investigate. Plaintiffs do not believe that Pisani did anything. (*Id.* at 58–69).

In May 2016, Plaintiffs again learned of more misconduct. They learned that Willoughby again stole cash from evidence in one of their cases. This time, Willoughby acted to falsely implicate Plaintiffs. He asked another police officer to write and backdate a report. He did so. That report falsely blamed the discrepancy on Plaintiffs' supposed miscounting of the cash in the first place. (*Id.* at ¶¶ 70–79).

Willoughby continued to attack Plaintiffs' reliability. He falsely accused them of exaggerating their arrest records and so exaggerating their effectiveness and success. (*Id.* at ¶¶ 80–86).

To try to make his false narrative real, Willoughby began to interfere with Plaintiffs' ability to prosecute cases. In June 2016, Plaintiffs learned that Willoughby took criminal evidence from one of their cases. Plaintiffs learned that Willoughby ordered other police officers not to return the missing evidence. The only apparent purpose of this act would be to threaten the viability of the prosecution. Willoughby also ordered officers not to help Plaintiffs by, for instance, transporting evidence to court or to forensic labs or documenting the chain of custody. (*Id.* at ¶¶ 87–104).

Willoughby's pattern of misconduct continued. He tried to abuse his position. He asked Plaintiffs to lie to a district attorney by falsely claiming that his friend's employee was a cooperator. Willoughby wanted to help out the friend's employee as payment in kind for home-improvement services that his friend had provided to him. Plaintiffs refused. (*Id.* at ¶¶ 115–120).

Similarly, Willoughby asked Plaintiffs to lie again to help get his daughter's boyfriend out of marijuana possession charges. Again, Plaintiffs refused. They did the right thing again. They reported this misconduct to superiors. (*Id.* at 121–27).

After that, Willoughby's retaliation got more serious. Plaintiffs had a reliable and effective confidential informant. Willoughby knew that. He disclosed the informant's identity to a defense-attorney friend of his. (*Id.* at ¶¶ 128–136). The revelation of a confidential informant's identity, of course, threatens that informant's work and safety. It also threatens Plaintiffs' reputation for trustworthiness when they deal with other potential informants. Nobody would want to be so outed. Nobody could trust a police officer who would allow that to happen.

Willoughby also acted to prevent Plaintiffs from working overtime. In doing so, he told other police officers that he intended to "get" Plaintiffs — meaning to retaliate against them. (*Id.* at ¶¶ 137–149).

– 3 –

Even worse, Willoughby threatened to endanger Plaintiffs. Plaintiff Brydges worked undercover. Willoughby threatened to post his picture to the public to reveal his identity. He also threatened to have people he knew from Chester to attack the Plaintiffs, or perhaps even kill them. (Id. at ¶¶ 150–158).

Plaintiffs became deeply concerned. They did not believe that Willoughby was making idle threats. Instead, they had concerns about their safety and the safety of their families. For instance, Plaintiff Brydges purchased security cameras for his house. (Id. at ¶¶ 159–160).

Plaintiffs took steps to address their concerns. They again spoke to Manager Pisani and Commission Willert. Pisani and Willert acknowledged that Willoughby had admitted to making the threats. Plaintiffs explained that they could not work under Willoughby given his abuse and threats. (*Id*. at ¶¶ 161–165).

Pisani and Willert claimed that they would address the situation. Instead, Willert and Pisani told other police officers that Plaintiffs' claims were baseless. (*Id.* at ¶ 166).

Willoughby continued to retaliate against Plaintiffs. In July 2019, he tried to prevent them from receiving overtime pay, although that decision was later reversed after Plaintiffs filed a grievance and spoke with Manager Pisani. Pisani also reassured Plaintiffs that he would talk to Commissioner Willert to help end Willoughby's retaliation. (*Id.* at ¶¶ 167–80).

The retaliation did not end. Willoughby claimed that someone burglarized his office. He falsely implicated Plaintiffs. (*Id.* at181–189). Willoughby also took yet more steps to deny Plaintiffs' overtime by preventing them from serving during an August 2020 protest. (*Id.* at ¶¶ 190–199).

The pattern of retaliation culminated in December 2020. Plaintiffs learned of an on-going federal criminal investigation of Township officials. Commissioner Willert believed that Plaintiffs were responsible for the investigation by providing the information that led to the federal investigation. (*Id.* at ¶¶ 200–202).

Willert decided to personally participate in the retaliation. He advanced a purported reorganization of the Police Department. Under that plan, the Department disbanded Plaintiffs' Anti-Crime Unit. Plaintiffs were transferred to a patrol division and demoted to the rank of Patrolman. Even though the agreements between Ridley Township and the police union requires demotion only for "just cause," Plaintiffs received no process prior to demotion. (*Id.* at ¶¶ 203–215, 262).

During all of this time, Commissioner Willert was aware of everything that was happening to Plaintiffs. Yet he did nothing to stop the abuse. While he acted on the margins, such as by restoring their use of "take home" vehicles and addressing some of the overtime issues, he did not meaningfully act. Instead, he furthered the retaliation against Plaintiffs through the purported restructuring of the Police Department.

## ARGUMENT

### I.     Willoughby improperly discusses extra-record facts.

In moving to dismiss Plaintiffs' pleading, Willoughby discusses at length facts that do not appear of record. This Court should not consider them because a Rule 12(b)(6) motion may rely only on the facts as pled. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Willoughby cannot now present his own facts about the structure of the Ridley Township Police Department; claim that Plaintiffs somehow, in a manner he fails to explain, "ignored the customary chain of command;" or rely on Ridley Township's own lawyer supposedly clearing it of wrongdoing. We did not plead any of those facts and they are not before this Court.

Willoughby does not present any evidence of these facts. He simply asserts that they are true. Accordingly, there is no need to convert Willoughby's Rule 12(b)(6) motion to a summary-judgment motion. *See generally Pension Ben. Guar. Corp. v. White Consol. Industs.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining that courts should so convert 12(b)(6) motions when the defendant offers

"extraneous evidence submitted by the defense"). This Court should instead simply ignore these irrelevant extra-record claims.

To the extent that this Court considers any such extra-record facts, Rule 12(d) requires this Court to provide Plaintiffs with a "reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). We would, if this Court so orders, present appropriate affidavits contesting Willoughby's claims, which would render summary judgment inappropriate even if somehow the facts Willoughby offers mattered — which they do not.

We do not move to strike the relevant portions of Willoughby's brief. As we explained in response to his motions to strike, there is no legally appropriate vehicle to do that.

## II.        Plaintiffs have a valid claim against Willoughby for their demotion.

As discussed later, Plaintiffs sue Willoughby under the First Amendment for a variety of reasons — not just the demotion. However, Willoughby starts by arguing that he is not liable for the demotion. We respond to that argument first; however, even if this Court agrees, the First Amendment claim should proceed for the reasons we discuss later.

Despite his central role in this dispute, Willoughby somehow claims that he had no personal involvement at all in demoting Plaintiffs. Willoughby fails to explain precisely to what legal claim this argument relates. However, in supporting his argument, he cites the well-known principle that civil-rights defendants must have personal involvement in the constitutional violation, most famously espoused in *Rode v. Dellarciprete*, 845 F.2d 1995 (3d Cir. 1988). *See* (Br. 6) (citing *Lahovski v. Rush Township*, 441 F. Supp. 3d 43, 51 (M.D. Pa. 2020)). We presume that his argument applies only to our First Amendment retaliation claim.

Willoughby's argument fails because he misunderstands the doctrine. The basis for the "personal involvement" doctrine is to preclude a *respondeat superior* theory in civil-rights cases.

Supervisors are not liable simply because they are supervisors. Instead, there must be personal involvement. *Rode*, 845 F.2d at 1207. For instance, in *Rode*, the Third Circuit a claim against the Governor of Pennsylvania for employment actions at the Pennsylvania State Police. The Third Circuit found that the Governor had no connection to the events and so could not be liable. *Id.* at 1208; *see also Dooley v. Wetzel*, 957 F.3d 366, 372 (3d Cir. 2020) (finding that Pennsylvania's Secretary of Corrections had no "personal involvement" in the plaintiff-prisoner's mental-health classification); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (similar).

The "personal involvement" doctrine does not apply here. Plaintiffs are not suing Willoughby because of his status as a supervisor. Instead, he is the prime mover in this entire dispute. The "personal involvement" doctrine is irrelevant. What is instead relevant are the causation principles applicable to § 1983 claims.

Willoughby's actions are sufficiently related to the demotion to render him liable for it under standard § 1983 causation principles. In assessing causation, the Third Circuit looks to common-law tort principles. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004). "It is axiomatic that "[a] § 1983 action, like its state tort analogs, employs the principle of proximate causation." *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (quoting *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir.1999)). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the [defendant's action] and the specific deprivation of constitutional rights at issue." *Hedges*, 204 F.3d at 850 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990)).

Here, there was a "plausible nexus" or "affirmative link" between Willoughby's actions and the demotion. The demotion was the result of Plaintiffs' reports of Willoughby's misconduct and all of the actions that Willoughby took to respond to those reports. Willoughby engaged in a systematic pattern of retaliation once he learned of the initial report. Plaintiffs would not have been demoted but

– 7 –

for Willoughby's actions. Willoughby was the prime mover in this dispute. He cannot now, on the pleadings alone, deny his connection to the demotion.

### III.        Plaintiffs stated a viable First Amendment claim against Willoughby.

Willoughby makes an intricate argument on the First Amendment, challenging different portions of it on different grounds. More holistically, we incorporate our briefing in response to the other defendants' Rule 12(b)(6) motions challenging the First Amendment claim by reference. We now address Willoughby's argument in the structure that he raised it.

#### A.        We agree with Willoughby that this Court may consider only acts that occurred on or after February 2, 2019 in assessing the First Amendment retaliation claim.

Under Third Circuit precedent, there is no "continuing violation" theory for First Amendment retaliation claims. Even the most minor retaliation is immediately actionable. As a result, a plaintiff's retaliation claim for any act of retaliation accrues as soon as the retaliation occurs. *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006). Under *O'Connor*, we agree that the only facts relevant to the First Amendment claim are those that occurred on February 2, 2019 or later.

We explain this issue in detail to make clear that it does not apply to our claim under Pennsylvania's Whistleblower Law. As we discuss later, the Whistleblower Law claim did not accrue until the Township demoted Plaintiffs. A Whistleblower Law claim is different than a First Amendment claim. The First Amendment is unique in that it renders it illegal for the government to take even the most "trivial" retaliatory actions, such as "failing to hold a birthday party for a public employee." *Id.* at 127–28. In contrast, as we discuss later as to the Whistleblower Law, Plaintiffs' claim can be based only on the entire sequence of events that culminated in demotion. As we discuss later, that renders the entire series of events at issue here actionable under the Whistleblower Law.

**B.      Plaintiffs' speech was constitutionally protected.**

Willoughby's argument that the events that occurred on or after February 2, 2019 were not a violation of the First Amendment ignore the nature of what happened here. These events reflected retaliation for reporting Willoughby's misconduct. Willoughby tries to read out this essential context that makes clear that his actions were unconstitutional.

As we have discussed above, the demotion is itself actionable under § 1983. Willoughby is liable for it under the principles of causation applicable to § 1983 claims.

To argue that he committed no other violation, Willoughby next ignores essential portions of our pleading. He accurately summarizes the conduct that occurred within the statute of limitations. As he explains, Plaintiffs pled that Willoughby tried to deny Plaintiffs overtime and falsely accused him of burglary. However, for no apparent reason, Willoughby never again mentions the false accusation of criminal conduct. He does not explain why it is appropriate for him to retaliate against Plaintiffs by falsely accusing them of a crime to spur a criminal investigation. By itself, that act is sufficient to state a § 1983 claim.

In addition, Willoughby's efforts to deny Plaintiffs overtime and the ability to participate in the Ridley Township's response to a Black Lives Matter demonstration are also actionable. Willoughby argues only that these are not matters of public concern. but that argument mischaracterizes the dispute.

Plaintiffs did not complain that Willoughby refused to give them overtime or allow them to respond to the demonstration for budgetary or administrative reasons. They allege that he did so *to retaliate against them for reporting his misconduct*. Retaliating against an employee for reporting misconduct is itself misconduct, which is a matter of public concern.

The First Amendment protects a report of misconduct. The First Amendment protects a public employee's report of "malfeasance or misfeasance." *Javitz v. County of Luzerne*, 940 F.3d 858, 864

(3d Cir. 2019). The Third Circuit and the Supreme Court have found that any number of internal reports or complaints are protected speech, including:

- An employee's report to her direct supervisor that a department head made unwelcome sexual advances. *Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997).

- An assistant district attorney's question to his co-workers about whether they ever felt pressured to assist political campaigns. *Connick v. Myers*, 461 U.S. 138, 149 (1983).

- A teacher's demands to her principal regarding the school board's policies and practices. *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 413 (1979).

- A police officer telling a county prosecutor that he disagreed with the prosecutor's proposed office reorganization and promotion plan. *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir. 1988) (emphasis added).

- An employee's letter to his department head criticizing the management of his department. *Monsanto v. Quinn,* 674 F.2d 990, 996–97 (3d Cir.1982).

- An employee's report to her supervisor about her concerns that workplace meetings were being illegally recorded. *Javitz*, 940 F.3d at 865.

The cases that Willoughby cites to support his argument, *Falco v. Zimmer*, 767 F. App'x 288 (3d Cir. 2019) (non-precedential) and *Frazier v. City of Philadelphia*, 441 F. Supp. 3d 76 (E.D. Pa. 2020) do not suggest otherwise. Willoughby cites *Falco* for a snippet of law that the First Amendment does not protect "mundane employment grievances." But the *Falco* panel did not actually apply that principle, merely stating it as part of its recitation of the law. The substance of *Falco* does not suggest that reporting retaliatory conduct is somehow not a matter of public concern. The *Falco* panel did not reject any claim as a "mundane employment grievance" or suggest that reports of retaliation are somehow such a grievance.

*Frazier* is also inapposite. There, the plaintiff alleged that supervisors refused to give her overtime because she opposed the Philadelphia Police Department's "flipping" policy relating to informants. But the district court found that was not true. Instead, the district court found as a matter of fact at summary judgment that the plaintiff simply wanted more overtime. After rejecting the

factual basis for the plaintiff's claim, the district court found that the First Amendment did not protect efforts to seek more overtime without connection to a substantive report of misconduct. *Frazier*, 441 F. Supp. 3d at 93.

> i.     **If Willoughby is arguing that Plaintiffs did not speak as citizens, his argument would be incorrect.**

As discussed above, the First Amendment categorically protects reports of misconduct. In addition, even ignoring that principle, Plaintiffs spoke as citizens under Third Circuit precedent.

It is true that the First Amendment does not protect employee speech "pursuant to their job duties." *De Ritis v. McGarrigle*, 861 F.3d 444, 453 (3d Cir. 2017) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). But the mere fact that employee speech is made "within the office" is not controlling. *Id.* Employees can receive protection for "expressions made at work." *Garcetti*, 547 U.S. at 420.

To distinguish whether an expression made at work is "within the scope of the employee's duties, courts must make a "practical inquiry." *Garcetti*, 547 U.S. at 424. There are not hard-and-fast rules.

*De Ritis* illustrates how this Court should conduct that inquiry. There, a public defender was transferred to the juvenile-court unit. The defender believed that the transfer was punishment for failing to induce enough clients to plead guilty. The defender shared this "rumor" while physically present in court but prior to the commencement of on-record proceedings. The defender also met with the County Solicitor and the chairman of the County Council in private to complain.

The Third Circuit explained that the in-court statements were part of the defender's duties, but the complaints to the Solicitor and to the chairman were not. Part of the defender's job was to "build rapport" with courts and opposing counsel. Sharing a rumor in court, even off the record, affected those duties. Moreover, the off-the-record statements could have an effect on the proceedings in

which the defender was involved. As a result, sharing "rumors" while in court was not "citizen" speech. In contrast, discussing those "rumors" outside of court *was* "citizen" speech even though made to the defender's superiors. The defender's complaints to superiors were not what he "was paid to perform on an ordinary basis."

Applying similar reasoning here, Plaintiffs' report of Willoughby's interference with criminal prosecutions was speech as a citizen. The report is much like the defender's complaints to superiors that the Third Circuit found to be citizen speech in *De Ritis*. That speech was not part of the actual job that the Township hired Plaintiffs to do. Instead, it merely related to those job duties. The First Amendment protects that speech under *De Ritis* and other decisions. *See Flora v. County of Luzerne*, 776 F.3d 169 (3d Cir. 2015) (Chief Public Defender's complaints about inadequate funding, equipment, and staff and about fallout from the "Kids for Cash" scandal were protected speech because they were not part of his job duties); *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014) (finding that the Deputy Chief Business Officer of the School District spoke as a citizen when he disclosed that the district improperly steered a contract to an ineligible contractor); *Jerri v. Harran*, 625 F. App'x 574, 580 (3d Cir. 2015) (non-precedential) (finding that a chief of a fire company's complaints to reporters and law enforcement about the wisdom of purchasing a "fire boat" was speech as a citizen).

### C.   Plaintiffs adequately alleged the causal connection between their protected speech and the retaliatory conduct necessary to state a claim.

In arguing that there is no causal connection, Willoughby asks this Court to substitute his version of the facts for Plaintiffs' version on the pleadings alone. That is not proper at this stage. Willoughby must reserve his "causal connection" arguments for later, at summary judgment or trial.

We agree that a First Amendment retaliation claim requires showing that a "a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Baloga v.*

*Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). But Willoughby misapplies this requirement.

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer* Co., 126 F.3d 494, 503–04 (3d Cir.1997)).

Here, Plaintiffs alleged that Willoughby's retaliation began *immediately after* Willoughby learned that Plaintiffs reported his misconduct to superiors:

> 42.  PLAINTIFFS questioned why WILLOUGHBY ordered them to re-package evidence since it had already been counted, recorded, and submitted to the Evidence Room.

> 43.  PLAINTIFFS knew that, by re-packaging the evidence, the "chain of custody" would be broken, which would negatively impact the prosecution of the criminal case.

> 44.  WILLOUGHBY admonished PLAINTIFFS for questioning him and again ordered them to re-package the money.

> 45.  When PLAINTIFFS looked at the sealed evidence-bags, they realized that the bags had been tampered with.

> 46.  PLAINTIFFS realized that the bills that were in evidence bags were not the same as what they had seized; the evidence bags had been re-packaged.

> 47.  PLAINTIFFS immediately notified Ridley Township's manager, PISANI who advised them that he would notify Police Commissioner WILLERT.

> 48.  PLAINTIFFS met with PISANI and WILLERT to explain the incident in person.

> 49.  At the meeting, PLAINTIFFS expressed concerns because WILLOUGHBY was their "boss" and, if he became aware of their report, he would retaliate against them.

50.  PISANI and WILLERT reassured Plaintiffs that no one would be aware of the report.

51.  By information or belief, PISANI told WILLOUGHBY about PLAINTIFFS' report to PISANI.

52.  WILLOUGHBY seemed irate and angry at PLAINTIFFS two days after they made their report to PISANI and WILLERT.

53.  First, WILLOUGHBY denied PLAINTIFFS' the use of a "take home vehicle" regularly driven by them to conduct drug investigations.

From there, Willoughby's retaliation became more serious as our Complaint details. But the point is that the course of conduct began *immediately*. All of the actionable conduct was part of the same pattern of retaliation.

Willoughby incorrectly tries to separate the subsequent retaliatory acts from the initial and immediate retaliation. He claims that it is simply not "plausible" that he would continue to retaliate against Plaintiffs years after the initial report. But we pled otherwise.

Willoughby now asks this Court to draw and unreasonable inference against Plaintiffs on the pleadings alone even though the applicable standard of review demands that this Court draw inferences *in favor* of Plaintiffs. He claims that the sheer length of his course of conduct somehow severs the causal link between the initial report of misconduct and the subsequent retaliation. But he cites no case that supports that interpretation.

Instead, he offers only *Roseberry v. City of Philadelphia*, 716 F. App'x 89 (3d Cir. 2017) (non-precedential), which does not support his cause. The *Roseberry* panel affirmed the grant of summary judgment where there was a substantial delay to take *any* retaliatory act. The plaintiff had a "gut feeling" that fellow officers retaliated against her for complaining that officers entered her home after arresting someone trying to break into it. She complained that, a year later, a captain denied her a commendation supposedly as retaliation. She also complained that, a year after she filed suit, a sergeant delayed providing her with backup, told another officer to interfere with her job in some

– 14 –

unspecified manner, did not give her a working radio, disciplined her for leaving roll call early, and disciplined her for contradicting orders. The Third Circuit found that the delay, together with no other proof of retaliatory intent, was enough to defeat the claim.

In contrast, here, Plaintiffs allege that Willoughby retaliated against them immediately after they reported his misconduct to superiors. There is a clear temporal link. Moreover, the severity of Willoughby's conduct provides additional evidence supporting a causal connection. To take just one example, Willoughby threatened to disclose Plaintiffs' identities to criminals so that the criminal could "get" them. Plaintiffs are undercover drug-enforcement agents. The threat to disclose the identify of an undercover drug agent is a serious threat. Disclosure could lead to a violent assault, which could possibly even lead to Plaintiffs' death. Plaintiffs aren't complaining that Willoughby didn't give them a medal. While suit for some of these serious acts is time barred, the acts are still relevant evidence to show the connection between Plaintiffs' protected speech and Willoughby's retaliatory conduct.

**IV.      Plaintiffs have a valid due-process claim, although we agree that the only remedy is a name-clearing hearing.**

After careful review, we have chosen not to seek damages for any due-process violation, although we believe that Third Circuit precedent leaves open that possibility. We ask this Court to permit Plaintiffs leave to amend their Complaint to explicitly seek a name-clearing hearing. We will leave a formal motion for once the various pending Rule 12(b)(6) motions are resolved.

We need maintain that claim only against the Township — which failed to provide any process for a name-clearing hearing — and so agree that no due-process claim should proceed against Willoughby.

**V.      Plaintiffs consent to dismissal of their IIED, defamation, and false-light claims against all Defendants.**

We agree that this Court should dismiss all of our state-law claims **except** under the Whistleblower Law and for conspiracy to violate the Whistleblower Law.

**VI.      Plaintiffs state a Whistleblower Law claim.**

**A.      The claim is not time barred.**

Willoughby incorrectly argues that Plaintiffs cannot sue him under the Whistleblower Law because he supposedly took no retaliatory act within the 180-day statute of limitations of 43 PURDON'S STAT. § 1424(a). This argument is incorrect for four reasons.

*First*, as we discussed above, Willoughby had personal involvement in Plaintiffs' demotion. That retaliatory act violated the Whistleblower Law and fell within the 180-day statute.

*Second*, Plaintiffs' Whistleblower Law claim did not even *accrue* until Plaintiffs were demoted. As we explained in our earlier brief in response to the Township's Rule 12(b)(6) motion, the demotion is the critical retaliatory act supporting Plaintiffs' claim. *See Vasil v. Dep't of Mil. & Veterans Affs.,* 230 A.3d 529, 538 (Pa. Commw. Ct. 2020) (Brobson, J.) (finding that a demotion is an actionable adverse employment action under the Whistleblower Law). The demotion occurred within the 180-day limitations period. As a result, the Whistleblower Law claim is timely.

*Third*, even if somehow Plaintiffs did not make the claim within the statute, the continuing-violation doctrine would permit suit. While the Whistleblower Law is a state law, Pennsylvania courts look to federal Title VII caselaw in interpreting it. *Vasil,* 230 A.3d at 538. At least one panel of the Commonwealth Court has applied the federal "continuing violation doctrine" to the statute of limitations applicable to a Whistleblower Law claim. *Collins v. Crago*, No. 1876 C.D. 2016, 2017 WL 4079024, *5 (Pa. Commw. Ct. Sept. 15, 2017) (unreported).

– 16 –

Here, the "continuing violation" doctrine would permit the Whistleblower Law suit even if it were somehow otherwise untimely — which it is not. "Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir.2006)).

The demotion was the final and critical act in the retaliatory conduct. It was an official act of Ridley Township that punished Plaintiffs for reporting Willoughby's misconduct. All of the prior retaliatory acts were part of the same pattern. Because Plaintiffs filed suit within 180 days of the demotion, they can bring a Whistleblower Law claim for the entire course of conduct that culminated in demotion.

*Fourth*, Willoughby is liable not just directly but in civil conspiracy, as we discuss later.

### B.       Plaintiffs alleged a "good faith report" as the Whistleblower Law requires.

The Whistleblower law protects employees who "make[] a good faith report . . . to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer." 43 PURDON'S STAT. § 1423(a). Plaintiffs' pleading amply alleges that they made such a report. Plaintiffs reported Willoughby's tampering with evidence. Not surprisingly, Willoughby does not deny that his actions, at least on the applicable standard of review, are reportable "wrongdoing."

Willoughby instead argues — incorrectly — that Plaintiffs did not act in "good faith." Supposedly, Plaintiffs' motivations were "personal" to protect their interest in getting overtime. This claim first misstates the record. Plaintiffs do not complain only about the denial of overtime. Instead, this entire suit is about Plaintiffs' report that Willoughby engaged in misconduct by tampering with

– 17 –

evidence. The significance of the subsequent complaints about overtime — which form only a small portion of the basis for the Whistleblower Law claim — are that Willoughby *retaliated* against them for reporting his misconduct. The import is not merely that Plaintiffs wanted overtime. Instead, Plaintiffs allege separate, significant, and wrongful retaliation that merely occurred in part through the *means* of attempting to deny overtime. This Court should not construe the Whistleblower Law to categorically exclude any claim merely because the report of misconduct could have incidental benefit to an employee.

Moreover, Willoughby's argument is for a jury, not for resolution on the pleadings. In ruling on a 12(b)(6) motion, this Court considers Plaintiffs' allegations in the "light most favorable to the plaintiffs." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This Court is to draw all reasonable inferences in favor of plaintiffs. *Id.* Instead, Willoughby asks this Court to instead draw all inferences *against* Plaintiffs, imagining what their intent was in reporting Willoughby's misconduct.

But that is not what courts do. Even setting aside the fact that Willoughby's argument contradicts the *Twombly* standard, trial courts reject his argument in the specific context of a Whistleblower Law claim. Where plaintiffs make "plausible" reports of wrongdoing, trial courts assume on the pleadings that those claims were made in good faith. *E.g. Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 56 (M.D. Pa. 2019); *see also Miller v. Helm*, No. 4:17-CV-01590, 2017 WL 6405738, *6 (E.D. Pa. Dec. 15, 2017) ("Mr. Miller has not pled his rationale behind, or motivation for, making his reports, but at this stage of the proceedings, before the development of any factual record, this Court can—and therefore must—infer that the reports were made "without malice or consideration of personal benefit.' "); *Abuomar v. Pa. Dep't of Corr.*, No. 4:14-CV-1036, 2015 WL 2073783, at *6 (M.D. Pa. May 4, 2015) ("[A] conclusive determination as to whether

Plaintiff made his report of wrongdoing with malice or consideration of personal benefit [by motion for judgment on the pleadings] would be premature.").

Plaintiffs' reports that Willoughby tampered with evidence and that they suffered retaliation as a result is "plausible." This Court should therefore draw the inference that Plaintiffs' report was made in good faith without any further consideration of the facts.

**VII.        Plaintiffs sate a valid civil-conspiracy claim against Willoughby.**

Willoughby incorrectly argues that there is no underlying legal wrong in which he could have conspired. That argument is not correct because Plaintiffs stated a valid Whistleblower Law claim. After our concessions, the only conspiracy claim that is left is the claim that the Defendants conspired to violate the Whistleblower Law. As we have discussed above, we have stated a valid Whistleblower Law claim that is within the statute of limitations.

Next, Willoughby incorrectly claims that there is insufficient evidence that anyone conspired with him to engage in wrongdoing. He complains that Plaintiffs' pleading is somehow "threadbare" in supporting that allegation. But Willoughby ignores the nature of a conspiracy claim.

"To state a cause of action for civil conspiracy, a plaintiff must show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Skipworth ex rel. Williams v. Lead Indus. Ass'n*, 690 A.2d 169, 174 (Pa. 1997) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). "It is well established, and sustained by abundant authority, that a conspiracy may be proven by circumstantial evidence . . . . The rule is, of course, not limited to criminal conspiracy; it is equally applicable to cases involving civil conspiracy. *Commonwealth v. Musser Forests, Inc.*, 146 A.2d 714, 716 (Pa. 1958) (internal citations omitted). There is no

requirement of "direct and positive testimony of a collusive agreement to do something wrongful." *Id.* Instead, the "least degree of concert or collusion between parties" is enough. *Id*

Plaintiffs' pleading amply supports a circumstantial inference of shared conspiratorial purpose. As we have detailed, others besides Willoughby assisted him in retaliating against Plaintiffs, concealed his wrongdoing, and ultimately demoted Plaintiffs. All of these acts had the same effect and purpose of retaliating against Plaintiffs for reporting Willoughby's wrongdoing.

Pennsylvania law makes clear that Plaintiffs have therefore pled enough factual matter to support their claim. For instance, in *Commonwealth v. Musser Forests, Inc.*, 146 A.2d 714(Pa. 1958), the existence of a shared desire to profit from a breach of contract was sufficient to establish a civil-conspiracy claim on the pleadings. The Commonwealth alleged that a company agreed to purchase at cost seedlings and trees from the Commonwealth to plant in Pennsylvania. The idea was to support tree planting for natural conservation. Instead, the corporation and the defendant officers or stockholders of that corporation planted the trees and then sold them for profit in breach of the contract. The defendants then falsely reported that they used the seedlings and trees appropriately. This scheme financially benefitted all of the defendants. That was enough to prove that the defendants acted with the "common purposed of defrauding the Commonwealth for their personal gain."

Here, despite multiple actors all acting for the same purpose of retaliating against Plaintiffs, Willoughby incorrectly claims that it is impossible to draw a similar inference in this case. Yet the fact that multiple people acted to accomplish the same retaliatory goal as is enough to draw the necessary inference of a wrongful purpose.

**VIII.**     **Willoughby is not entitled to immunity.**

> **A.**     **Willoughby is not entitled to qualified immunity on the First Amendment claim.**

Case after case clearly establishes that Willoughby violated Plaintiffs' First Amendment rights. We have already cited any number of cases clearly establishing liability. To summarize, Willoughby violated two principles of First Amendment law that Supreme Court and Third Circuit cases clearly establish.

First, Plaintiffs spoke as citizens by raising concerns because those complaints were not part of their job duties. Caselaw clearly establishes that the First Amendment protected Plaintiffs' speech and that retaliation against them for it was unlawful. See *Flora v. County of Luzerne*, 776 F.3d 169 (3d Cir. 2015) (Chief Public Defender's complaints about inadequate funding, equipment, and staff and about fallout from the "Kids for Cash" scandal were protected speech because they were not part of his job duties); *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014) (finding that the Deputy Chief Business Officer of the School District spoke as a citizen when he disclosed that the district improperly steered a contract to an ineligible contractor); *Jerri v. Harran*, 625 F. App'x 574, 580 (3d Cir. 2015) (non-precedential) (finding that a chief of a fire company's complaints to reporters and law enforcement about the wisdom of purchasing a "fire boat" was speech as a citizen). All of these cases apply clearly established Supreme Court precedent concerning public-employee First Amendment retaliation claims, including *Pickering v. Board of Educ.*, 391 U.S. 563 (1968), *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Lane v. Franks*, 573 U.S. 228 (2014).

Second, the First Amendment protects employees when they report misconduct. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Any number of Supreme Court and Third Circuit decisions have applied that rule. *See, e.g.*, *Javitz v. County of Luzerne*, 940 F.3d 858, 864 (3d Cir. 2019) (explaining that reporting wrongdoing is not "within the realm" of an employee's "ordinary job duties" and

protecting an employee for reporting a concern about illegal recording of workplace meetings) (quoting *Flora v. County of Luzerne*, 776 F.3d 169, 180 (3d Cir. 2015)); *Connick v. Myers*, 461 U.S. 138, 149 (1983) (protecting an assistant district attorney's question to his co-workers about whether they ever felt pressured to assist political campaigns); *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 413 (1979) (protecting a teacher's demands to her principal regarding the school board's policies and practices); *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir. 1988) (protecting a police officer who told a county prosecutor that he disagreed with the prosecutor's proposed office reorganization and promotion plan; *Monsanto v. Quinn,* 674 F.2d 990, 996–97 (3d Cir.1982). (protecting an employee's letter to his department head criticizing the management of his department).

In contrast, Willoughby cites not a single case to show that somehow Plaintiffs' First Amendment rights were not clearly established. But we can cite two full paragraphs of caselaw showing that they are.

### B.      Willoughby is not entitled to state-law immunity.

In Pennsylvania, the employees of local governments have certain immunity protections from state-law claims. Under the Tort Claims Act, 42 PA. CONS. STAT. § 8541, *et seq.*, an employee who acts within the course and scope of his employment is liable "only to the same extent as his employer." 42 PA. CONS. STAT. § 8545. Local governments are presumptively immune from all claims. 42 PA. CONS. STAT. § 8541. Generally speaking, they are subject to suit only if one of nine statutory exemptions applies. 42 PA. CONS. STAT. § 8542(b). However, that immunity does not apply here because the Whistleblower Law abrogates that immunity.

After Plaintiffs' concessions, the only state-law claim that Plaintiffs pursues against anyone is for violating the Whistleblower Law and for conspiring to violate the Whistleblower Law.

Willoughby's employer — Ridley Township — has no immunity from Whistleblower Law claims and so neither does Willoughby.

The Whistleblower Law specifically subjects local governments to liability. 43 PURDON'S STAT. Sections 1423(a) and 1423(b) prohibit an "employer" from taking certain actions. By definition, an "employer" includes a "public body." 43 PURDON'S STAT. § 1422. A "public body" includes a township. *Id.*

Ridley Township is not immune from liability. The Pennsylvania Supreme Court has held that, where a statute creates "a targeted form of accountability" on a government body or its employees, there is no Tort Claims Act immunity. *Dorsey v. Redman*, 96 A.3d 332, 341 (Pa. 2014). In *Dorsey*, a Pennsylvania statute specifically imposed liability on registers of wills who fail to require an administrator of an estate to post bond to insure proper administration of an estate under certain circumstances. The Pennsylvania Supreme Court found that there could be no Tort Claims Act immunity where a statute specifically imposed liability on the government. *Id.* at 339–42; *see Hidden Creek L.P. v. Lower Salford Tp. Auth.*, 129 A.3d 602, 611–612 (Pa. Commw. Ct. 2015) (finding that the Tort Claims Act did not immunize an authority from a statutory claim for excessive sewer tapping fees). The same analysis applies here.

This case is even stronger for Plaintiffs here than it was for the plaintiffs in *Dorsey*. In *Dorsey*, the "register of wills liability" statute was enacted *before* the Tort Claims Act. The Pennsylvania Supreme Court therefore had to distinguish the general principal of Pennsylvania law giving precedence to later-enacted statutes where a conflict exists. Despite this principle, the Court found that the statute plainly intended to impose liability and so it would not give effect to the later-enacted statute. *Dorsey*, 96 A.3d at 342.

Here, in contrast, the Whistleblower Law postdates the Tort Claims Act, making even more clear that there is no statutory immunity. The General Assembly initially enacted the Tort Claims

Act as the Political Subdivision Tort Claim Act, Act of Nov. 26, 1978, P.L. 1399 (the "PSTCA"). It later codified the statute into Pennsylvania's Consolidated Statutes through the Act of Oct. 5, 1980, P.L. 693, No. 142. The new, codified statute has no formal name, but we refer to it as the "Tort Claims Act" to distinguish from its predecessor. In contrast, the General Assembly enacted the Whistleblower Law through the Act of Dec. 12, 1986, P.L. 1559, No. 169 — over eight years after the PSTCA and over six years after its codification.

As a result, even if there were a conflict between the Tort Claims Act and the Whistleblower Law, the Whistleblower Law would control. "Whenever the provisions of two or more statutes enacted finally by different General Assemblies [that is, in different legislative sessions] are irreconcilable, the statute latest in date of final enactment shall prevail." 1 PA. CONS. STAT. § 1936.

Lastly, even if this Court disagreed with our statutory analysis, Willoughby would still be subject to suit. Local government employees lose their Tort Claims Act immunity if their conduct "constitute[s] a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550. Here, Willoughby's retaliatory course of conduct qualifies as, at minimum, willful misconduct. While Willoughby claims that our allegation to that effect is not supported, we pled ample facts to draw an inference of willful misconduct on the pleadings.

IX.     **This Court should grant leave to amend to the extent that it finds any defects in Plaintiffs' pleading.**

To the extent that this Court agrees with any of Willoughby's arguments besides those we do not oppose, it should grant Plaintiffs leave to amend their Complaint. The Third Circuit has squarely explained: "[I]n civil rights cases district courts must offer amendment — irrespective of whether it is requested — when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251

(3d Cir. 2007). Even as to Plaintiffs' non-civil-rights claims, this Court should grant leave to amend "freely . . . when justice so requires." FED. R. CIV. P. 15(a)(2).

Here, many of Willoughby's arguments are technical, faulting Plaintiffs for supposed bare-bones pleading . We could add additional details to address any concerns that this Court might have with Plaintiffs' pleading. While Willoughby asks this Court to deny leave to amend based on his bare assertion that leave to amend would be futile, he does not support that claim.

Moreover, this Court should not hold it against Plaintiffs that they amended their Complaint before anyone filed a Rule 12(b)(6) motion as Willoughby suggests. Plaintiffs amended to remove certain claims, address certain technical errors, and otherwise clean up their complaint so that the parties would not have to waste time filing unnecessary motions to dismiss. That was laudable, not something that this Court should use to deprive Plaintiffs of leave to amend to address the Defendants' concerns once they raised them.

CONCLUSION

Plaintiffs ask this Court to deny Willoughby's 12(b)(6) motion, except as to the Due Process Clause, defamation, false-light, and IIED claims. We will further seek leave to amend to explicitly add a request for a name-clearing hearing, but to remove a claim for damages for the due-process violation.

Respectfully submitted,

_/s/ Daniel J. Auerbach_
Robert Gamburg, Esq. (Pa. I.D. No. 68808)
Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
robert@gamburglaw.com
dan@gamburglaw.com

*Co-Counsel for Plaintiffs*

_/s/ Andres Jalon_
Andres Jalon, Esq. (Pa. I.D. No. 83685)
Jalon & Associates
17 W. Airy Street
Norristown, Pennsylvania 19401
ajalon@jalonesq.com

*Counsel for Plaintiffs*

Dated: May 17, 2021

## CERTIFICATE OF SERVICE

This document has been filed electronically and is available for viewing and downloading from the ECF system. All parties have been served through ECF as all parties are represented by counsel who have consented to electronic service.

_____/s/ Daniel J. Auerbach_____

Robert Gamburg, Esq. (Pa. I.D. No. 68808)
Daniel J. Auerbach, Esq. (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
robert@gamburglaw.com
dan@gamburglaw.com

*Co-Counsel for Plaintiffs*

Dated: May 17, 2021